LEONARD v. THE BURLINGTON MUTUAL LOAN ASSOCIATION.

1. **Corporation:** LIABILITY FOR MONEY HAD AND RECEIVED. Evidence considered under which it was held that the defendant, a corporation, was liable for money had and received, on account of certain sums advanced by the plaintiff to the defendant's secretary and manager, as loans to the defendant, and by him paid into its treasury, although the secretary was at the time a defaulter to the defendant, and was not authorized to borrow money on its account.

*Appeal from Des Moines District Court.*

WEDNESDAY, APRIL 6.

ACTION at law. Trial by the court, judgment for the plaintiff, and defendant appeals

*Hall & Huston*, for appellant.

*Blake & Hammack*, for appellee.

SEEVERS, J.—I. I. Heider was secretary of defendant, and plaintiff claims to have deposited with him, as such, certain money for which Heider executed on behalf of defendant, as is claimed, certain instruments of writing, whereby the defend-

ant became bound to pay the plaintiff three thousand dollars, with ten per cent interest thereon, to be paid monthly.

The plaintiff seeks in his petition to recover on said instruments, and in an amendment thereto for money had and received. The answer consisted of a denial, and alleged that: " Heider had no authority to borrow said money and his acts in the business were null and void. That said Heider was a defaulter to the defendant, and was not able to account for the moneys which he had received, and that he without authority made the said loan, for his own use and benefit, and not that of defendant, and defendant denies it received and had said money, or that said money was received by defendant as alleged in plaintiff's amendment to petition; and defendant avers that, if the said Heider placed said money in the funds of said defendant, he did so as his own money (and for the purpose of making good to that extent his shortage)."

On motion of the plaintiff the portion of the answer enclosed with brackets was stricken out.

The court found for the plaintiff on the amendment to the petition, for money had and received.

I. It is assigned as error that the court erred in striking out portions of the answer. The material question, so far as the count for money had and received is concerned, was whether the defendant received the plaintiff's money, or that of Heider, and such issue is sharply presented by the answer as it stood at the trial. Any evidence bearing on such issue was material, and, therefore, evidence was admitted showing Heider was a defaulter, and such must have been regarded by the court below as an established fact, and it will be so conceded on this appeal. No prejudice could, therefore, have possibly resulted from the ruling of the court sustaining the motion to strike.

II. As the court found for the plaintiff only for money had and received, and as this is the money for which the written instruments were executed, it amounts to a finding that the plaintiff was not entitled to recover on such instruments.

The error said to have been caused by the admission of the instrument in evidence is not material, because the plaintiff has not appealed and we shall not consider any questions except such as legitimately arise on the appeal of the defendant. Under the issue made in the pleadings the material question for determination may be thus stated. Did the defendant have and receive the plaintiff's money or that of Heider. In considering this question the several errors discussed by counsel will be disposed of.

As the money was placed in the hands of Heider by the plaintiff at several different times, counsel for the appellant insist that if defendant is responsible for a part, it does not follow it is for all. In this we concur, and, therefore, the only way to satisfactorily dispose of the questions before stated is to briefly refer to and discuss the evidence bearing on each separate sum of money, premising, however, that the well settled rule must prevail, which is, that the finding of the court has the force and effect of a verdict of a jury. If, therefore, the evidence be conflicting, the finding will not be disturbed. Nor do we weigh the evidence as we would do if the case was triable anew instead of on errors assigned. The evidence is not seriously conflicting, and if the court has erred in its conclusions of law, based on the conceded or undisputed facts, such error can be corrected on this appeal. Without doubt the plaintiff in good faith gave Heider as secretary of defendant the amount of money sued for, and that he supposed he was loaning it to the defendant.

It was the duty of Heider to receive all money paid unto the treasury of the defendant, and the evidence shows the business of the association was largely intrusted to him. He was the general manager thereof. The sources from which money was obtained, as defined in the charter and by-laws of defendant, were in certain payments made at stated periods by the stockholders, loaning the same, receiving interest and premiums thereon. No express power was given any officer, or all of them combined, to borrow money.

The first money placed in Heider's hands by the plaintiff was $800 on January 23, 1874. This money was deposited by Heider to his individual credit in the First National Bank on the same day he received it. The plaintiff sought to show by Heider what he did with the money so deposited. To this defendant objected that such deposit was a conversion, and it was therefore immaterial what Heider did with the money after it became the property of the bank in which it was deposited. While it is true as between Heider and the bank the money deposited became the property of the latter, and conceding the plaintiff could not have followed it and have recovered of the bank, still we think it was competent for the plaintiff to show, if he could, there was no intention on the part of Heider to convert it to his own use. Heider was unable to state why he had made the deposit to his individual credit. But he testified that on January 26 and 27, 1874, he drew his individual checks on the fund to his credit in bank, and which had been increased by the deposit of the plaintiff's money, in payment of loans made by the defendant, and thus it is if at all the plaintiff's money was placed in the funds of the association. No entry was made of this transaction on the books or records of the defendant until May, 1876, and this is true as to all other money received of plaintiff by Heider. If there was no other evidence bearing upon the question before us it would be difficult to say the money paid out on the checks of Heider belonged to, or was the property of, the plaintiff. We incline to think it could not be so regarded.

It was Heider's duty, and he made monthly reports to the defendant's board of directors of the money received, loaned, or otherwise disposed of. The money received of the plaintiff should, we suppose, have appeared in the February report if placed in the funds of the association. The report was silent on this subject, but it appeared therefrom that more money had been appropriated, that is loaned and paid out for legitimate purposes, than had been received. Such

amount was $531.19. The March report, however, showed there had been appropriated by the defendant money belonging to the plaintiff to the amount of $813.32. The $13.32 being interest on $800. The April report showed a payment to plaintiff of $13.33 as interest, and also among the money appropriated was $800 advanced by the plaintiff. For June the report showed a payment of interest to plaintiff, and that for July showed $206.66 paid plaintiff as money loaned and interest; the $6.66 being interest. The report for September showed a payment of interest to the plaintiff. The reports thereafter frequently contained payments of interest. This was not the case every month, but at intervals, and so continued up to May, 1877. The record of the board of directors show said reports " were read 'and ordered filed." The plaintiff and Heider testified said reports, or some of them, were approved by the board. As to this it may possibly be said there is a conflict in the evidence, but the court below could well find therefrom the said reports were approved.

The plaintiff was a director of the defendant in 1874, and has been at all times a stockholder. He did not notify the directors or any officer of the defendant that he had given Heider money for defendant, or that he had made the latter a loan, and no one connected with the association had any knowledge thereof, except himself and Heider.

At the several times the reports made by Heider showed money belonging to the plaintiff had been appropriated by the defendant, or at least nearly all of such periods, Heider received more money belonging to the defendant than he accounted for. It is perhaps a legitimate inference from the evidence that Heider knew, in 1873, he was a defaulter, and from that time forward the amount of the defalcation continued to increase.

Conceeding, then, when Heider deposited the $800 to his individual credit it amounted to a conversion, nevertheless it was his duty as between the plaintiff and himself to account for the money so converted and place the same where he and the

plaintiff understood it was to be placed; that is, among funds belonging to the association, or to its credit. This he testifies he did, as above stated. The defendant had knowledge of this fact, or if this be not so the court below was clearly justified in finding from the said reports money belonging to the plaintiff had been appropriated by the defendant. No inquiry was made as to why this was so, and in fact neither the plaintiff nor the defendant or any of its directors or officers, other than Heider, had any knowledge the latter was a defaulter.

If no such defalcation existed, it would probably be conceded the defendant should account to the plaintiff for the money aforesaid. Should this fact exonerate it from so doing. Stating the case as strongly for the defendant as the evidence will warrant us in doing, in our opinion we have this case: Heider misappropriated and converted to his own use money belonging to both the plaintiff and the defendant. Now, suppose Heider had drawn from the fund which had been increased by the deposit of the plaintiff's money to his individual credit, and repaid the plaintiff, the defendant could not justly complain. Instead of so doing he loans the same for the benefit of the defendant, and the latter has knowledge the plaintiff's money has been appropriated to its benefit. Heider was indebted to both these parties, and appropriated or set apart a certain amount of money for the plaintiff. When he did so such money became the property of the plaintiff, and Heider therewith as we have said made loans for the use and benefit of the defendant. We see no reason why Heider could not pay either the plaintiff or the defendant, and he testified he paid the former. The money on deposit to the credit of Heider belonged to him, it was his property, and he could do what he pleased with it. From what source obtained except from plaintiff does not appear. In fact and in legal contemplation we think Heider paid the money to the plaintiff for his use and benefit. Of this the defendant cannot justly complain for the reasons above stated, and because the defalcation was not increased thereby.

In addition to this it may be said the defendant knew in 1874 it had received and appropriated money belonging to the plaintiff. It was so advised by the reports aforesaid, and we are not prepared to say, because it discovered in 1877 that Heider was a defaulter at the time the money was received, it should not account therefor.

On August 21, 1874, the plaintiff gave Heider as secretary of defendant his check for $500, and on November 19th, another check for $100. The evidence clearly and without doubt establishes that both of said checks were deposited in bank to the credit of the defendant.

On the 21st of July, 1876, the plaintiff gave Heider a similar check for $1,200, which Heider testifies he got cashed and deposited the currency so obtained to the credit of defendant in bank. There is nothing which is contradictory to this evidence, but there is evidence which strengthens and confirms it.

The remaining $600 was given Heider in currency, and he testifies: " With the $600 cash Leonard gave me November 4, 1874, and $88 for which I gave my check, I paid a loan to C. P. Squires, on four shares, a few days after I received the $600. Mr. Squires had a warrant for $720 on the treasurer, I took it up and deposited it as a paid warrant the same as cash." The District Court under this evidence was warranted in finding the plaintiff's money was used by the defendant in making a loan to Squires.

Counsel for the defendant say, " the essence of our defense is that we didn't want to borrow money, and that Heider had misappropriated more than would satisfy all our needs, all of which was well known to him, and that as a consequence, when he borrowed money and put it into defendant's treasury, he put it there as his own."

This ignores the plaintiff.. He intended and thought he was loaning money to the defendant. Heider as an officer of the defendant, having full charge of its business, received the money as a loan made to the defendant. Neither he nor the

plaintiff understood Heider was borrowing the money. It is true the defendant had no occasion to borrow money, and upon this appeal it must be conceded Heider had no authority to bind the defendant by the contract made. If Heider had converted the money to his own use and failed to place it among the funds or to the credit of the defendant, it may be the plaintiff could not recover. But the fact is the defendant has money belonging to the plaintiff, and under the evidence we think the court was justified in finding against the defendant for money had and received.

We have endeavored to, and think we have, set out the evidence quite fully, in so far as it bears on the points made by counsel for appellant. Farther than this it was unnecessary to go. We have examined *Smith v. Tracy*, 36 N. Y., 79, and *Baldwin et al. v. Burrows et al.*, 47 Id., 199, largely relied on by appellant, and do not think them applicable. It is suggested, but not pressed, that the defendant should have been permitted to show that Heider was engaged, during the time said defalcation occurred, in other business, and handled large sums of money. Without extending this opinion we deem it sufficient to say we do not think the proposed evidence was admissible.

AFFIRMED.