[No. 19505.    Department Two.—April 4, 1895.]

FREDERICK N. PAULY, RECEIVER, ETC., APPELLANT, v. CHARLES W. PAULY, ASSIGNEE, ETC., AND THE SAN DIEGO CABLE RAILWAY COMPANY, RESPONDENT.

CORPORATIONS—NOTES EXECUTED BY SECRETARY—ABSENCE OF AUTHORITY. Promissory notes executed in the name of a corporation, by its secretary, who does not appear to have been authorized to execute them by any resolution of the board of directors, or to have been clothed with general power to execute promissory notes or other obligations on its behalf, do not bind the corporation, and are not admissible in evidence in support of causes of action based thereon.

ID.—RATIFICATION—UNAUTHORIZED SPECIAL MEETING.—An attempted express ratification of promissory notes at a special meeting of the board of directors, of which the directors were not all notified, is not made at a meeting duly assembled, and does not bind the corporation as a corporate act.

ID.—RECOVERY OF MONEY LOANED BY BANK.—If a bank has in fact furnished to a cable company moneys, whether as loans upon unauthorized promissory notes, or upon account, or paid money for construction of its road, or in discharge of its legal liabilities, such moneys, so far as the same were in fact applied to the proper use and benefit of the cable company, may be recovered by the receiver of the bank, to the extent to which they have not been repaid.

ID.—BENEFITS RECEIVED UNDER ULTRA VIRES CONTRACT—INTEREST.—A corporation must account for benefits received under an *ultra vires* contract, with interest on the amount found due.

ID.—DISTINCT CORPORATIONS—CONTRACTS—PARTIAL IDENTITY OF DIRECTORS NO BAR.—The fact that some of the directors of the bank were also directors of the cable company does not prevent them from being distinct corporations, who have a right to contract with each other in their corporate capacities, and, if the relation of the parties has not been abused, it constitutes no bar to a recovery for moneys advanced by the bank, and used for the benefit of the cable company.

ID.—IMPLIED PROMISE—REPAYMENT OF MONEY.—Where money is obtained by and disbursed through the proper financial officer of a corporation through the agency of a bank, and is applied to the proper uses of the

corporation, there arises from such use an implied promise of the corporation to repay the money to the bank.

ID.—STATEMENT OF BANK ACCOUNTS—NOTE REFERRED TO IN ACCOUNT— ADMISSIBILITY OF EVIDENCE—INDEBTEDNESS—FINDING.—Where the statement of accounts furnished to the k k-keeper of the cable company by the bank, and the ledger account of t cable company showing the account of the bank made up from the stat ent, shows an item of credit of a note, such note is properly admissible 1.1 evidence as explanatory of the entry, and the amount thereof should be added to a final balance or overdraft against the cable company, and judgment should be recovered therefor; and a finding that the cable company was not indebted to the bank is not justified by the evidence.

ID. —BOOKS OF BANK AND VOUCHERS — PRIMA FACIE EVIDENCE. — The books of a bank and the vouchers returned to the cable company's book-keeper with the statements are properly admissible in evidence, and should be regarded as *prima facie* evidence of the way the accounts stood at the date of the last balance.

ID.—EFFECT OF VOUCHERS AS EVIDENCE—CERTIFIED BILLS.—The vouchers delivered with the statements of the bank to the cable company are not only *prima facie* evidence of the payment by the bank of the several sums named in them, but these payments, having been paid principally upon bills certified by the general manager, to that extent, at least, furnish satisfactory evidence that the money paid thereon was in fact applied to the proper use and benefit of the cable company, and it is prejudicial error to exclude from evidence the vouchers and books of the bank.

ID.—MODE OF KEEPING BANK ACCOUNTS—ABSENCE OF PASS-BOOK—AD-MISSIBILITY OF EVIDENCE.—The fact that the cable company had no pass-book, and that the money was paid out upon bills and not upon checks, does not affect the admissibility of the bank-books and of the statements rendered to the cable company's book-keeper showing the deposits as well as the payments in the same manner as if written up in a pass-book.

ID.—INTEREST OF OFFICERS OF CABLE COMPANY IN BANK—WEIGHT OF TESTIMONY.—The fact that two officers of a cable company were interested in the bank does not affect the admissibility in evidence of the books of the bank; but such interest merely invites scrutiny of the accounts, and goes only to the weight of the testimony, and not to its admissibility.

ID.—ADMISSIBILITY OF UNAUTHORIZED NOTES.—Although notes executed by the secretary of the cable company without proper authority are not evidence of a liability of the express contract appearing upon their face, yet if the money represented by or named in the notes was furnished by the bank which was the payee of the notes, and was received by and applied to the proper use and benefit of the cable company, the notes are admissible in evidence for the purpose of showing that the money represented by them was furnished by the bank.

ID.—DOUBLE AGENCY.—The fact that officers of the corporation were also officers of the bank does not affect the admissibility of the notes in evidence as an admission that the money was furnished by the bank.

Id.—AGENCY FOR TWO PARTIES—PRESUMPTION.—There can be no presumption that an agent of two parties will deal unlawfully with either, and it is only where the agent has personal interests conflicting with those of his principal that the law requires peculiar safeguards against his acts.

APPEAL from a judgment of the Superior Court of San Diego County and from an order denying a new trial.

The facts are stated in the opinion.

*M. A. Luce,* for Appellant.

The cable company ratified the act of its secretary in executing the notes in question by the acquiescence of the directors of the corporation. It is well settled that a principal who neglects promptly to disavow an act of his agent by which the latter transcends his authority makes that act his own. (Morawetz on Private Corporations, secs. 618, 628–35; *Kelsey* v. *National Bank,* 69 Pa. St. 429.) When a contract is made by any agent of a corporation on its behalf, and for a purpose authorized by its charter, and the corporation receives the benefit of the contract without objection, it may be presumed to have authorized or ratified the contract of its agent. (*Union Gold Min. Co.* v. *Rocky Mt. Nat. Bank,* 96 U. S. 640; *Pittsburgh etc. R. R. Co.* v. *Keokuk etc. Bridge Co.,* 131 U. S. 371; *Indianapolis Rolling Mill* v. *St. Louis etc. Ry. Co.,* 120 U. S. 256; *Union Pac. Ry. Co.* v. *Chicago etc. Ry. Co.,* 51 Fed. Rep. 327.) Acquiescence is good evidence of consent, and if the agents of a corporation, viz: its board of directors, who have power to ratify an unauthorized act performed by an agent, manifest no dissent after having received notice, a ratification of the act may often be presumed. (Morawetz on Private Corporations, sec. 633, and authorities cited.) It is not necessary that there should be any direct proceedings with an express intention to ratify. Ratification by directors may be made by the acquiesence of a majority of the directors with full knowledge of the contract so ratified. Ratification may be also presumed from a fail-

ure to exercise promptly the right of disaffirmance.
(1 Beach on Private Corporations, sec. 195; *Sherman* v.
*Fitch*, 98 Mass. 59; *Gribble* v. *Columbus Brewing Co.*, 100
Cal. 67; *Inhabitants of Arlington* v. *Peirce*, 122 Mass.
270; *Lyndeborough Glass Co.* v. *Massachusetts Glass Co.*,
111 Mass. 315; *Brown* v. *Winnisimmet Co.*, 11 Allen,
326; *Scott* v. *Middletown etc. R. R. Co.*, 86 N. Y. 200;
*Moss* v. *Rossie Lead Min. Co.*, 5 Hill, 137; *Scott* v. *Metho-
dist Church*, 50 Mich. 528; *Central Transportation Co.* v.
*Pullman Palace Car Co.*, 139 U. S. 60; *Underhill* v. *Santa
Barbara etc. I. Co.*, 93 Cal. 311, 312; Morawetz on
Private Corporations, secs. 628–635; *Willis* v. *St. Paul
Sanitation Co.*, 53 Minn. 370; *Currie* v. *Bowman*, 25 Or.
364; *Tuscaloosa Cotton Seed Oil Co.* v. *Perry*, 85 Ala. 158.)
The corporation is bound by the mere acts of a ma-
jority of the directors within the scope of their author-
ity. (Angell & Ames on Corporations, secs. 291, 292;
*Bank of Middleburg* v. *Rutland etc. R. R. Co.*, 30 Vt. 159;
*Goodall* v. *New England etc. Ins. Co.*, 25 N. H. 169.)
And their sanction may be even implied from circum-
stances. (Angell & Ames on Corporations, sec. 302;
*Ridgway* v. *Farmers' Bank*, 12 Serg. & R. 256; 14 Am.
Dec. 681.) Benefits having been received, only slight
evidence of acquiescence is necessary. (*Sherman Center
Town Co.* v. *Morris*, 43 Kan. 282; 19 Am St. Rep.
134.) A voluntary acceptance of the benefits of a
transaction is equivalent to a consent to all the obliga-
tions arising from it, so far as the facts are known, or
ought to be known, to the persons accepting. (Civ.
Code, sec. 1589.) Where promissory notes are executed
by an agent of the corporation for a previous indebted-
ness of the corporation for money received by it and
used for its benefit, and the officers knew of the exist-
ence of the indebtedness, and never objected thereto,
such knowledge is evidence of an acquiescence, and the
corporation is estopped from denying the due execution
thereof. (*Manhattan etc. Co.* v. *Phalen*, 128 Pa. St. 110;
*Carson City Sav. Bank* v. *Carson City Elevator Co.*, 90
Mich. 550; 80 Am. St. Rep. 454; *Dewey* v. *Toledo etc.*

*Ry. Co.*, 91 Mich. 351; *Bank* v. *Flour Co.*, 41 Ohio St. 552.) A ratification may be inferred from the acquiescence of the directors or other governing body of the corporation; from the fact that after the facts have been brought to their knowledge they have taken no measures to show dissent; from the fact that they did not question accounts submitted; from the fact that they kept the proceeds or retained the benefits of unauthorized acts of their agent. (*Houghton* v. *Dodge,* 5 Bosw. 336; *Woodbridge* v. *Proprietors of Addison,* 6 Vt. 204; *Hoyt* v. *Thompson,* 19 N. Y. 208–15; *Walworth County Bank* v. *Farmers' Loan etc. Co.,* 16 Wis. 629; *Farmers' Bank* v. *Sherman,* 6 Bosw. 181; *Beattie* v. *Delaware etc. R. R. Co.,* 90 N. Y. 643.) Where a person, with the knowledge and acquiescence of the officers of a corporation, and without special request, advances money to pay the debt of said corporation, the acquiescence of such officer amounts to a ratification, and the corporation will be liable. (*Martin* v. *Victor etc. Co.,* 19 Nev. 180.) The court erred in refusing to admit in evidence the journal-book of the corporation containing the minutes of a special meeting held November 28, 1891, which by resolution acknowledged and agreed to pay the notes set forth in the complaint and overdraft claimed to be due by the bank, as these minutes, with the offer made by counsel to prove the reception by the corporation of the benefits for which the notes were given, were admissible to show the action of a majority of the board of directors of the corporation on this subject. (Greenleaf on Evidence, sec. 493; *Humphrey* v. *People,* 18 Hun, 393, 394; *Pier* v. *George,* 20 Hun, 210, 211; *Albany City Nat. Bank* v. *Albany,* 92 N. Y. 363, 367; *Holbrook* v. *Jackson,* 7 Cush. 136, 142, 147; *Bonnell* v. *Griswold,* 89 N. Y. 122; *Edgerly* v. *Emerson,* 23 N. H. 555; 55 Am. Dec. 207; *County Court* v. *Baltimore etc. Ry. Co.,* 35 Fed. Rep. 167; *Horton* v. *Long,* 2 Wash. 435; 26 Am. St. Rep. 867; *Sherman Center Town Co.* v. *Morris, supra.*) The vouchers offered in evidence by the plaintiff should have been admitted. They were certainly admissible

as tending to corroborate other testimony which was offered that the plaintiff bank had paid these accounts with its own money. (*Martin* v. *Victor etc. Co., supra.*)

*James E. Wadham,* for Respondents.

There can be no ratification by a principal of an unauthorized act of the agent either by acquiescence or other means, in the absence of knowledge of the act. Mr. Fisher, one of the directors, had no knowledge of what was done at the alleged special meeting, and therefore could not have ratified it. (*Davidson* v. *Dallas*, 8 Cal. 227; *Marziou* v. *Pioche*, 8 Cal. 522; *Blen* v. *Bear River etc. M. Co.*, 20 Cal. 602; 81 Am. Dec. 132; *Bi-Spool S. M. Co.* v. *Acme Mfg. Co.*, 153 Mass. 404; *Davis* v. *Rock Creek etc. Co.*, 55 Cal. 359; 36 Am. Rep. 40.) Moreover, under section 2310 of the Civil Code, a ratification can be made only in the manner that would have been necessary to confer an original authority for the act ratified. (*McCracken* v. *San Francisco*, 16 Cal. 591.) And this rule holds true unless the acts of the principal are sufficient to show an estoppel *in pais*. (*Borel* v. *Rollins*, 30 Cal. 408.) A corporation can confer authority upon an agent only by resolution of its board of directors, duly assembled. (1 Morawitz on Private Corporations, sec. 351; *Fihn* v. *Miller Brewing Co.*, 15 N. Y. Supp. 57.) The court did not err in excluding the minutes of the special meeting, as the notice of the meeting was not given to each of the directors, and was therefore invalid. (*Thompson* v. *Williams*, 76 Cal. 153; 9 Am. St. Rep. 187; *Harding* v. *Vandewater*, 40 Cal. 77; *Simon* v. *Sevier Assn.*, 54 Ark. 58.) The contention that the minutes were admissible to show the action of a majority of the board, and as showing a ratification by such majority of the execution of the notes in suit, is without merit, as the meeting, not having been properly called, any resolution passed or act done would be invalid as a corporate act. (*Smith* v. *Dorn*, 96 Cal. 73; *Gashwiler* v. *Willis*, 33 Cal. 11; 91 Am. Dec. 607; *Alta etc. Co.* v. *Alta Min. Co.*, 78 Cal. 629; *Doyle* v. *Mizner,*

42 Mich. 332; *Thompson* v. *Williams, supra; Harding* v. *Vandewater, supra; In re Homer etc. Gold Mines,* L. R. 38 Ex. Div. 566; 1 Morawetz on Private Corporations, sec. 532.) The management of the affairs of a corporation is intrusted to its directors as a board, and the separate action of the directors individually is not, and cannot be the act of the constituted body of men clothed with corporate powers. (1 Morawetz on Private Corporations, sec. 351; 17 Am. & Eng. Ency. of Law, 83; *Estate of Rittenhouse,* 140 Pa. St. 172; *Lockwood* v. *Thunder Bay etc. Co.,* 42 Mich. 536; *Baldwin* v. *Canfield,* 26 Minn. 43; *First Nat. Bank* v. *Christopher,* 40 N. J. L. 435; 29 Am. Rep. 262; *Yellow Jacket etc. Co.* v. *Stevenson,* 5 Nev. 224; *Hillyer* v. *Overman etc. Co.,* 6 Nev. 51; *Stoystown etc. Co.* v. *Craver,* 45 Pa. St. 386; *Reilly* v. *Oglebay,* 25 W. Va. 36; *Herrington* v. *Liston etc. Township,* 47 Iowa, 11; Civ. Code, secs. 305, 308, 377; *Salfield* v. *Sutter County etc. Co.,* 94 Cal. 546, 549; *Cammeyer* v. *United etc. Churches,* 2 Sand. Ch. 186.) Two out of three directors at the alleged special meeting were directors not only of the cable road company but also of the bank. A director occupies a fiduciary capacity, and cannot deal with himself, or derive any benefit from his trust, and where two corporations have directors in common, such directors are disqualified to act in dealings between the two corporations, and contracts made where they do so act can be set aside as fraudulent. (Cook on Stock and Stockholders, sec. 658; 1 Morawetz on Private Corporations, sec. 520; *San Diego* v. *San Diego etc. R. R. Co.,* 44 Cal. 106; *Metropolitan Ry. Co.* v. *Manhattan Ry. Co.,* 11 Daly, 373; 14 Abb. N. C. 103; *Sterling* v. *Smith,* 97 Cal. 343; *Finch* v. *Riverside etc. Ry. Co.,* 87 Cal. 597; *Cumberland Coal Co.* v. *Sherman,* 30 Barb. 553; *Pickett* v. *School Dist. No. 1,* 25 Wis. 552; 3 Am. Rep. 105; *Pearson* v. *Concord R. R. Co.,* 62 N. H. 537; 13 Am. St. Rep. 590; *Goodin* v. *Evans,* 18 Ohio St. 150; *Barr* v. *New York etc. R. R. Co.,* 125 N. Y. 263; *Wardell* v. *Railroad Co.,* 103 U. S. 651.) The court did not err in excluding the books of the bank, as no foundation was laid for their introduction, by evidence

that the account was kept in the regular and usual order of business, as is necessary where a party seeks to introduce his own books of account as evidence for himself. (1 Smith's Leading Cases, 9th Am. ed., 573; *Watrous* v. *Cunningham*, 71 Cal. 30; *Vosburgh* v. *Thayer*, 12 Johns. 464; *Roche* v. *Ware*, 71 Cal. 375; 60 Am. Rep. 539.) Another matter of preliminary proof that must under the authorities first be proved is where the entries are made by a clerk or book-keeper, as in the case at bar, and the clerk or book-keeper has no knowledge of the correctness of the items, but made them as they were furnished by another, that the correctness of the items so furnished should be shown by the party furnishing them. (1 Smith's Leading Cases, 9th Am. ed., 572; *Gould* v. *Conway*, 59 Barb. 355; *Rindge* v. *Breck*, 10 Cush. 43; *Roche* v. *Ware*, 71 Cal. 375, 377; 60 Am. Rep. 539.)

HAYNES, C.—The complaint contains several causes of action, the first four being upon promissory notes alleged to have been executed by the San Diego Cable Railway Company to the California National Bank of San Diego, aggregating $57,330. Another cause of action is for attorneys' fees and expenses in a certain action brought by the bank against the cable company in the United States circuit court; and the last cause of action is for the sum of $359,000, for moneys alleged to have been paid by the bank to various persons at the request of the cable company for its use and benefit and upon its order. The $359,000 includes the moneys evidenced by the promissory notes sued upon in the antecedent counts.

The answer consists of specific denials of the allegations of the complaint, and a counterclaim to recover the sum of $50,000, the alleged value of certain shares of the capital stock of the cable company, and the further sum of $119,000 for moneys alleged to have been had and received by the bank to and for the use of the cable company.

The cause was tried by the court without a jury, and

the court found against the plaintiff upon each of its causes of action, and also against the defendants upon their counterclaim, and judgment was entered accordingly. This appeal is taken by the plaintiff from the judgment against him and from an order denying his motion for a new trial. There is no appeal from the judgment upon the counterclaim.

The bank became insolvent and suspended business November 12, 1891, and the cable company was adjudged insolvent March 15, 1892.

Appellant specifies certain particulars in which the findings are claimed to be not justified by the evidence, but the principal questions arise upon rulings made upon questions of evidence; and the more important of these hinge upon the relations existing between these corporations through their respective boards of directors.

The board of directors of the cable company consisted of Dare, Collins, Havermale, Palmerston, and Fisher. Of these Dare, Collins, and Havermale were officers and directors of the bank, Havermale being president and Collins cashier, while Dare was president of the cable company, Havermale vice-president, and Collins treasurer.

The promissory notes in question were executed in the name of the cable company by O'Brien, secretary, but he does not appear to have been authorized to do so by any previous resolution or formal direction of the board, nor does there appear to have been any general power conferred by the board upon the secretary to execute promissory notes or other obligations of that character on its behalf.

It is claimed by appellant, however, that these notes were ratified by the cable company: 1. By a failure of that company to dissent; and 2. By express action of the board of directors of the cable company, at a special meeting held November 28, 1891, at the house of vice-president Havermale, at which meeting there were present Havermale, Collins, and Palmerston, of whom

Palmerston only was not interested in the bank; Dare being absent in Europe, and Fisher not having been notified. As evidence of such ratification plaintiff offered in evidence the minutes of said special meeting, as follows:

On motion of Mr. Palmerston, seconded by Mr. Collins, the following resolution was unanimously adopted:

"*Resolved,* That the San Diego Cable Railway, a corporation, by and through its board of directors, regularly assembled, does hereby acknowledge and agree to pay the sum of $84,330, being due the California National Bank of San Diego, and evidenced as follows: One note of $20,000, dated September 3, 1891, due December 3, 1891; one note of $10,000, dated September 3, 1891, and due December 3, 1891; one note of $10,130, dated September 3, 1891, and due December 3, 1891; one note, $17,200, dated June 30, 1891, and due on demand. The sum of $27,000 placed to the credit of the S. D. Cable Railway Co. in their account with the California National Bank, on February 12, 1891, being carried in the form of a note as a cash item signed by Dare & Collins for $28,500; also, an overdraft for the sum of $9,444.27. The total principal sum being $93,774.27."

Counsel for plaintiff also stated that he expected to follow with further evidence going to show that the cable company received the money, and that it went into the construction of the road; that the business had been transacted at the bank; that the cable company obtained its money there, and that these notes were given for the debt.

Several objections were made to the introduction of said minutes, to the effect that the meeting was not called by competent authority; that it was not held at the office of the company; that the minutes do not show that notice was given to Fisher; that Fisher was in fact not notified, and that two of the three directors present were directors of the bank, and could not bind the cable company by an acknowledgment of an indebtedness to the bank.

Appellant does not rely upon the authority of the secretary to execute these notes to sustain their validity. No such authority was shown; and as to the attempted express ratification, it appearing affirmatively that the meeting was special, and that the directors were not all notified, the meeting was not duly assembled, and its action did not bind the corporation as a valid corporate act. The other objections to the admission of the minutes as an express ratification of the execution of the notes need not be considered. The court, therefore, did not err in the exclusion of the resolution as evidence of express ratification, nor in refusing to receive the promissory notes in evidence in support of the causes of action based thereon. Whether they could be received in connection with other evidence, for any purpose, need not be considered in this connection.

This, however, is not conclusive of the right of the plaintiff to recover for money loaned or advanced by the bank so far as it was applied to the proper uses of the cable company. The liability of defendant does not rest upon the express contract appearing upon the face of these notes, but upon the right of the lender to recover money which has gone to swell the assets of the cable company. If the bank in fact furnished to the cable company moneys, whether as loans upon unauthorized promissory notes, or upon account, or paid money for construction of its road, or in discharge of its legal liabilities, so far as the same were in fact applied to the proper use and benefit of the cable company, such moneys may be recovered by the plaintiff to the extent to which they have not been repaid. Plaintiff in the last count of his complaint pleaded facts which, if proved, would entitle him to such a recovery. In support of this proposition see the following authorities: Morawetz on Private Corporations, secs. 526, 616; 715, *Gardner* v. *Butler*, 30 N. J. Eq. 702, 721, 724; *Twin Lick Oil Co.* v. *Marbury*, 91 U. S. 587; *Santa Cruz R. R. Co.* v. *Spreckles*, 65 Cal. 193; *Seeley* v. *San Jose etc. Co.*, 59 Cal. 22. In *New Castle Northern R. Co.* v. *Simpson,*

23 Fed. Rep. 214, it was held that the corporation must account to the contractor for benefits received under an *ultra vires* contract, with interest on the amount found to have been due when the work was stopped.

In *Leavenworth* v. *Chicago etc. Ry. Co.*, 134 U. S. 688, 707, Mr. Justice Blatchford, speaking for the court, said: " I am unable to see any thing in the fact that some of the same men were found to be trustees in this deed and directors in the Rock Island Company, and that directors in the Southwestern Company were also directors in the Rock Island Company, which should block the course of justice, paralyze the power of the court, and deprive the creditor corporation of all remedy for the enforcement of its lien. If it could show that the Southwestern Company did not owe this interest, or that the Rock Island Company had in its hands the means of the Southwestern Company to meet this obligation, and that by reason of collusion between those who controlled both companies this fact was suppressed or concealed, it would present a strong case for relief. But this would be actual fraud, and one not necessarily growing out of the influence of the Rock Island directory over that of the Southwestern. Notwithstanding this commingling of officers the corporations were distinct corporations. They had a right to make contracts with each other in their corporate capacities, and they could sue and be sued by each other in regard to these contracts; and the question is not could they do these things, but have the relations of the parties—the trust relations, if indeed such existed—been abused to the serious injury of the Southwestern Company."

The money that was paid, from whomsoever it was obtained, was obtained by and disbursed through the proper financial officer of the cable company, viz., its treasurer, through the agency of the bank, and if applied to the proper uses of that company there at once arose an implied promise to repay it.

The remaining controversies, so far as they involve the rulings of the court upon questions of evidence,

require a general statement of the facts disclosed by the record.

The bank was in existence before the cable company was organized. Who the stockholders of the cable company were, aside from the directors, is not disclosed. It is shown that on February 15, 1890, certificate No. 2, 500 shares was issued to Collins, and certificate No. 3 to Dare for 500 shares, and to Palmerston July 8, 1890, 100 shares; that Fisher originally held 500 shares, but, on March 17, 1890, he sold all but one share to Dare and Collins.

During part of the time covered by these transactions Collins was cashier of the bank, and part of the time president, and all of the time treasurer of the cable company. Dare and Havermale were also directors of the bank, and were also president and vice-president, respectively, of the cable company, and Palmerston and Fisher, who were not connected with the bank, were the remaining directors, Fisher being the general manager.

An account was opened by the bank with the cable company, and all moneys, whether acquired by loans or otherwise, were credited to the company's account by the bank as deposits. Fisher had charge of the construction and general business, and bills and accounts of labor and materials were presented to him; he would O. K. them, signing his name thereto, and direct the holder to go to the bank for payment; and these bills, accounts, time warrants of the laborers, etc., were paid by the teller of the bank as though they were checks, stamped paid, and charged to the company's account.

From the organization of the cable company through all these transactions J. E. O'Brien was book-keeper of that company, and during the latter part of the time was also its secretary. The company had no pass-book as a depositor, but generally twice a week the bank would deliver to O'Brien a statement of the company's account and surrender the paid vouchers, and from these statements and vouchers O'Brien kept a ledger account with the bank in the books of the company, which was

thus practically a rescript of the bank's books. Some of the machinery was purchased by Dare, and the bills for such did not pass through Fisher's hands, but would be audited and settled for at the bank; and part of the time, instead of giving time checks to laborers, a pay-roll would be made out and money to pay the same would be drawn from the bank in bulk, and a check would be the voucher in such case, but by whom drawn does not appear. At the time of the trial Dare had long been absent in Europe, Collins was dead, and two of the three book-keepers of the bank who made entries in the company's account in the books of the bank were absent from the state. The cashier of the bank and the book-keeper who had charge of the general books of the bank testified as to the manner in which the accounts were kept, and Brimhall, one of the three who kept the books in which this account appeared, testified to the hand-writing of the absent book-keepers as well as his own, that the entries were made in the usual course of business on the day of the several transactions as they occurred, and that he believed the account to be correct. Some testimony was also given by one or more other parties who had settled their private accounts with the bank and found the bank's accounts to be correct.

The court eventually received in evidence, first, the statements of account furnished to the book-keeper of the cable company by the bank, and afterward the ledger of the cable company showing the account with the bank made up from said statements, but refused to receive in evidence the books of the bank and the vouchers returned to the cable company's book-keeper with the statements.

Plaintiff again offered in evidence each of the notes set out in the complaint, and these were again excluded. Plaintiff then offered in evidence the note of $17,200, dated June 30, 1891, as explanatory of an item of the same date and amount appearing in the statement admitted in evidence, said item being, "Note for $17,200," for the purpose of showing that that entry was of the

note offered, and that note was thereupon received in evidence. The ledger account of the cable company which was received in evidence showed that said credit, "note for $17,200," was carried through the stated accounts to the final balance as a credit to that amount, and these statements also showed a final balance or overdraft against the cable company of $9,444.27. This balance added to the credit, "note for $17,200," makes $26,644.27, and for this amount appellant insists he should have had judgment, and that the finding that the cable company was not indebted to the bank in any sum whatever is not justified by the evidence, and this contention, I think, must be sustained.

The evidence was meager in regard to the financial resources of the cable company. Mr. Fisher testified, when called by defendants, that "Collins and Dare looked after the financial part of the road entirely, and I never saw any of the accounts after I passed on the bills, as I have stated here before; I would O. K. them, and that is the last I would ever see of them"; that he did not examine the books; that he had implicit confidence in Mr. Dare and Mr. Collins; that after the failure of the bank he only knew of any balance being due the bank through reports in the newspapers, but he never said any thing to the officers of the bank about it; that prior to the failure of the bank he heard rumors that the bank was carrying the cable company, and the officers of the bank denied it, and said the cable company had a balance in the bank. When these conversations occurred does not appear, but it does appear that after March 17, 1890, he held but one share of stock, having sold 499 shares to Collins and Dare, and admitted that after that time, though he remained a director, he had no financial interest in the corporation, and gave that as the reason why he made no inquiries as to the truth of the newspapers' reports after the bank's failure, to the effect that the cable company owed the bank "ninety odd thousand dollars." It would, therefore, appear probable, at least, that the former inquiries

were made in the early stages of the work. All the notes mentioned in the record were made after Fisher parted with his interest in the corporation. It further appeared that though Mr. Fisher had procured the books for the book-keeper in which to keep the company's accounts, he had never looked into them or sought to inform himself of the state of the company's accounts.

In Morse on Banks and Banking, third edition, section 295, page 513, it is said: "The sound rule would seem to be that the depositor's bank-book, if it has been returned to him, and he has not within a reasonable time objected to it, should be regarded as *prima facie* evidence of the way the account stood between him and the bank at the date of the last balancing. It settles the presumption in the case, and leaves the *onus* on the party disputing it."

This *prima facie* evidence was not rebutted, and judgment for the sum stated should have been for the plaintiff.

There are other grounds justifying a reversal, and, as they involve questions which will doubtless arise upon another trial, they should be noticed.

The vouchers delivered with the statements to the cable company are not only *prima facie* evidence of the payment by the bank of the several sums named in them, but these payments, having been made principally upon bills certified by the general manager, to that extent, at least, furnished satisfactory evidence that the money paid thereon was in fact applied to the proper use and benefit of the cable company; and, as we have already held that the plaintiff could not recover upon the notes alone, because of their unauthorized execution, such evidence was material and important to the plaintiff, and he was prejudiced by the exclusion of these vouchers.

The court also erred in excluding the books of the bank.

The first objection to this evidence argued by counsel for respondents in his brief is that these books were not "kept in the regular and usual order of business,"

because the cable company had no pass-book, and because the money was not paid out upon checks, but upon bills, etc. Whether or not there was a pass-book in no wise affected or changed the mode of keeping the bank's accounts. The statements rendered to the cable company's book-keeper showed the deposits as well as the payments, in the same manner as if written up in the pass-book. That payments were made upon bills instead of checks could not affect the correctness of the accounts, the bills being treated as checks.

I think the preliminary evidence was sufficient to authorize the admission of the books of the bank, especially in view of the fact that statements of the bank's account had been regularly furnished to the cable company, thus giving it the opportunity to examine it and investigate its correctness. These statements being in evidence, and no objection having at any time been made to them, furnished at least *prima facie* evidence that the account of the bank was correct. The interest of Dare and Collins as officers of the bank does not seriously, if it at all, affect this question. Their interest on behalf of the bank was not greater than in transactions with any other customer, and it is well settled that books of account kept by banks are admissible in evidence. (See *McLennan* v. *Bank of California*, 87 Cal. 569, 575, and cases there cited.) The interest of parties to a transaction invites scrutiny just as the interest of a witness invites scrutiny; but such interest goes only to the weight of the testimony, not to its admissibility; even when a party was disqualified as a witness, because of his interest, he was permitted to testify to the correctness of his account and put that in evidence.

It has been seen that the notes upon which the first four counts are based, not having been executed by proper authority, are not evidence of a liability upon the express contract appearing upon their face; but, as it is also true that if the money represented by or named in the notes was furnished by the bank, and was received by and applied to the proper use and benefit of

the cable company, plaintiff is entitled to recover the same, the question arises whether the notes are admissible in evidence for the purpose of showing that the money represented by them was furnished by the bank.

The record does not disclose the circumstances under which nor by whose direction the secretary executed the notes. It does appear, however, that Collins and Dare were intrusted with the management of the finances of the cable company, and the only evidence in the record showing that money was received from any other source than the bank was given by Mr. Fisher, to the effect that he understood that the money was borrowed in the east; that he, Collins, and Dare, each made notes individually, the other two becoming indorsers, and he thought that in this way about $100,000 was raised, and that he did not know of the cable company borrowing in its own name.

The stumbling block in this case, however, seems to have been the double relation or agency of Collins, Dare, and Havermale, being at the same time officers and directors in both corporations. In *Adams Min. Co. v. Senter*, 26 Mich. 73, Captain Frue was the agent of the Adams Company, and also of the South Pewabic Company. Frue sold to Senter certain timber belonging to the Adams company in payment of a bill which the Pewabic company owed to Senter, in order that the latter company should be given additional credit, and this action was brought by the plaintiff against the defendant for taking said timber. After discussing other questions, Mr. Justice Campbell said:

"The question next arises, How far the double agency of Captain Frue affected his relations to his employers and to third persons. It was claimed that, upon the principle that a man cannot contract with himself, and cannot occupy positions involving a conflict of duties, all of his dealings whereby the property of one company was transferred to or used for the other should be held unlawful. There is no validity in such a proposition. The authority of agents may, where no law is violated,

be as large as their employers choose to make it.   There are multitudes of cases where the same person acts under power from different principals in their mutual transactions.   Every partnership involves such double relations.   Every survey of boundaries, by a surveyor jointly agreed upon, would come within similar difficulties.   It is only where the agent has personal interests conflicting with those of his principal that the law requires peculiar safeguards against his acts.   There can be no presumption that the agent of two parties will deal unfairly with either.   And when both deliberately put him in charge of their separate concerns, and there is any likelihood that he may have to deal with the rights of both in the same transactions, instead of lessening his powers it may become necessary to enlarge them far enough to dispense with such formalities as one man would use with another, but which could not be possible for a single person to go through with alone."

Collins and Dare were not the bank, though they were its agents; and in an action by the bank, or its receiver, it is not perceived why their acts and admissions as the agents of the cable company, in charge of its financial affairs, are not admissible in evidence against it in relation to those matters that were intrusted to their management by the latter company.   If they had procured the money from another bank with which they were not connected, assuming that the notes were executed by the secretary by their direction, I think it would not be contended that the notes were inadmissible in evidence, in connection with the other facts, for the purpose of showing that the payee was the party lending the money.

I think the judgment and order should be reversed and a new trial granted.

SEARLS, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are reversed and a new trial granted.

HENSHAW, J., TEMPLE, J., McFARLAND, J.