[Civ. No. 7682. First Appellate District, Division One.—August 27, 1931.]

A. J. PADGHAM, Appellant, v. INYO MARBLE COM-
PANY (a Corporation), Respondent.

Robert E. Austin and John N. Helmick for Appellant.

George L. Greer and Perry F. Backus for Respondent.

MR. JUSTICE KNIGHT DELIVERED THE OPINION OF THE COURT.—Plaintiff brought this action to recover certain sums of money alleged to be due on several assigned claims against the defendant corporation, one of which was based on a promissory note for $5,000. The trial took place before the court sitting without a jury, and judgment was given in favor of plaintiff on all counts but one, which related to the promissory note. With reference thereto the court found that the note was executed and delivered to R. H. Tune ''by the officers of said corporation without authority and that in so executing and delivering said note, they acted in excess of their authority and there was no consideration whatsoever therefor''. Accordingly judgment on that count was rendered in favor of defendant, and plaintiff appeals therefrom.

A copy of the note was not set out in the complaint, nor was the original or a copy thereof produced at the trial, but it appears from the findings that the note was executed and delivered on or about December 31, 1926, that it bore seven per cent interest, and provided for the allowance of an attorney's fee in case suit was brought to collect it. The circumstances leading up to the execution and delivery of the note, briefly stated, were as follows: On the date of its execution and for the several months preceding the plaintiff herein, A. J. Padgham, was the president and E. D. Rasmussen was the treasurer of said corporation. R. H. Tune, the payee named in the note, had been its general manager and secretary for several years, but whether or not he occupied either of those positions on the date of or shortly preceding the execution of the note is not clear

from the record. A man named Dunn owned the controlling interest in the company, but had held no office therein since 1915. The company had much outstanding indebtedness, and on November 5, 1925, the directors sought to adjust its financial affairs by borrowing money or issuing the notes of the corporation in liquidation or renewal of said indebtednesses, and to that end adopted a resolution authorizing and directing "the president or vice-president and the secretary or assistant secretary" of the corporation "to issue a note or notes or to borrow money from any private individual, firm, or company or bank for and in the name of this corporation, and on such terms as may be agreed to by said officers, such sum or sums of money as in the judgment of said officers this corporation may require for the purpose of liquidating, renewing, or funding any indebtedness of this corporation now owing and due, provided the aggregate amount of such loans or notes shall not at any time exceed the sum of $10,000"; and the resolution further provided that "said president or vice-president and said secretary or assistant secretary are hereby authorized, directed and empowered to execute in its corporate name for such moneys so borrowed or for such obligations so renewed, extended or refunded, and interest, the note or notes of this corporation, and deliver the same to said respective payees . . . " The plaintiff herein, A. J. Padgham, as one of the directors of said corporation, was present at the directors' meeting at the time the resolution was passed and voted for its adoption. Shortly after the adoption of the resolution Dunn, although not an officer of the corporation, prepared and handed to Tune the promissory note in question, which as stated was made payable to Tune, and requested the latter to obtain Padgham's signature thereto, which Tune did. Dunn then secured the signature of Rasmussen (the treasurer of the corporation) thereto, and after leaving the note with Tune for a short while took it from Tune's desk without having it indorsed by Tune. About a month later Tune saw the note for the last time. It was then on Dunn's desk, and he attempted to take possession of it, but was unable to do so. Shortly after these transactions took place a new directorate and set of officers took control of the corporation and thereafter conducted its affairs. At the time of trial (July, 1928), Dunn

was in the penitentiary and Tune admitted that he, too, had been sent there about the same time; but whether the offenses for which they were committed to prison grew out of the transactions connected with the affairs of said corporation does not appear. Evidence was introduced to show that the note was issued in part payment of money claimed to be due Tune from the corporation for past services, but it would seem that there is a conflict in the evidence as to how much, if anything, was actually due him at the time the note was executed, the accountant who examined the books under the new *régime* having testified that Tune's account was overdrawn.

■ It is conceded that the sole authorization for the issuance of the note was the resolution above mentioned; no claim being made by plaintiff that any such authority was derived from statute, or the by-laws or articles of incorporation of the company; and as will be observed, by the terms of said resolution, the directors of the company restricted the authority to adjust its indebtedness and to issue notes in liquidation thereof to the "president or vice-president and the secretary or assistant secretary"; and admittedly neither the secretary nor the assistant secretary participated in this transaction, nor did either of them join with the president, as contemplated and directed by the terms of the resolution, in issuing and signing the note in question, the treasurer, Rasmussen, having presumed to do so in their place and stead without any legal authority whatever from the corporation.

As said in *Black* v. *Harrison Home Co.*, 155 Cal. 121 [99 Pac. 494, 497]: "It is an elementary principle of corporation law that the president of a corporation has no power merely because he is president to bind the corporation by contract. The management of the affairs of a corporation is ordinarily in the hands of its board of directors, and the president has only such power as has been given him by the by-laws and by the board of directors, and such other power as may arise from his having assumed and exercised the power in the past with the apparent consent and acquiescence of the corporation. The general rule in this regard is stated in 2 Cook on Corporations, section 716, as follows: 'The president of a corporation has no power to buy, sell, or contract for the corporation, nor to control its property,

funds or management. This is a rule which prevails everywhere, excepting possibly in the state of Illinois. . . . It is true that the board of directors may expressly authorize the president to contract; or his authority to contract may arise from his having assumed and exercised that power in the past; or the corporation may ratify his contract or accept the benefits of it, and thereby be bound. But the general rule is that the president cannot act or contract for the corporation any more than any other one director.' '' (Citing numerous cases.) In that case the validity of a contract for the sale of real estate belonging to the corporation was challenged, and, as here, the directors' resolution authorized the president and secretary to execute the same; but it was executed by the president alone; and in holding that it was unenforceable against the corporation the court said: "The resolution of the board of directors authorized such contracts only when jointly executed by the president *and* secretary. The president's want of express authority to make either of these contracts on behalf of the corporation is thus affirmatively made to appear." ■ Furthermore, it may be stated as a general rule that promissory notes executed in the name of a corporation by an officer thereof, who has not been authorized by directors' resolution so to do, and who is not clothed with general power to execute the same or other obligations on its behalf, do not bind the corporation (*Pauly* v. *Pauly*, 107 Cal. 8 [48 Am. St. Rep. 98, 40 Pac. 29]). Of course, there are a number of exceptions to the foregoing rule, among them being where the corporation has received the proceeds or the benefit of the note, and where, by a course of conduct as outlined in the decisions, it is estopped from setting up noncompliance with corporate by-laws or resolutions; but it is unnecessary to go into those exceptions or discuss them here because the facts of this particular case do not bring it within any of them. Nor are we to be understood as holding that the note in question would have been unenforceable in the hands of an innocent purchaser, because that situation is not involved. ■ Here, as stated, the note which plaintiff is seeking to enforce against the corporation is one that he executed and delivered himself, as the president of the corporation, in violation of the very terms of the resolution which gave him the only authority to act at all in the

matter; and it further appears without dispute that, as one of the directors of the corporation, he was present at the meeting of the board when the resolution was passed, and voted for its adoption. Under such circumstances we are of the opinion that the trial court correctly held that as against him the corporation is not estopped from urging as a defense the irregularity above mentioned, in the issuance and execution of the note. (*Putnam* v. *Ensign Oil Co.*, 272 Pa. 301 [116 Atl. 285].)

Plaintiff seems to attach some importance to a "financial statement" prepared by Tune as general manager of the corporation, which was submitted to and accepted by the old board of directors several weeks after the note in question was executed; but he has failed to refer to any part of the statement showing that the note in question was mentioned therein; and even though it were mentioned the transaction relied upon was entirely insufficient as a matter of law to constitute a ratification.

It is well to mention in conclusion that plaintiff has furnished us with no authorities whatever to support his position on the appeal, the very few he has cited involving questions far remote from those with which we are here concerned.

The judgment is affirmed.