E. T. SWENSON AND ANOTHER v. G. O. MILLER TELEPHONE COMPANY.
FRED A. SWENSON v. SAME.[1]

June 25, 1937.

No. 31,300.

[1]Reported in 274 N. W. 222.

*R. H. Fryberger,* for appellants.
*A. J. Rockne,* for respondent.

JULIUS J. OLSON, JUSTICE.

The two cases here involved were tried together before the court without a jury and have been similarly submitted here. Findings were made for defendant in each case and judgments entered in accordance therewith.

The facts essential to decision may be summarized thus: Over a period of more than 30 years one G. O. Miller was engaged in the general merchandising business and other business affairs at White Rock, in Goodhue county. Two corporations were later organized by him, one known as the G. O. Miller Company, primarily engaged in the mercantile business, and the other, the present defendant, G. O. Miller Telephone Company, engaged in the business indicated by its name. Of the two companies, the mercantile company was by far the larger and more extensive in its ramifications. Officers and directors of both companies were the same. They were near relatives, their associations intimate and apparently cordial. Mr. Miller was the principal stockholder in both enterprises and the one who apparently had final authority on matters of policy and the general conduct of their business. The affairs of the two companies

were intermingled. Their books and records do not disclose with any degree of accuracy just what took place as to one corporate enterprise as distinguished from the other. The banking affairs of the G. O. Miller Company were conducted at the bank at White Rock. The telephone company had a bank account of its own at Goodhue, a near-by village, where it operated a substantial part of its system.

In the first case, that of E. T. Swenson and wife, the cause of action is founded upon a promissory note reading as follows:

"1500.00 White Rock, Minn., July 1, 1926. "One year after date we promise to pay to the order of Mr. and Mrs. E. T. Swenson fifteen hundred and no/100 dollars, at 6% interest per annum until paid.

"No........Due........     G. O. Miller Telephone Co.
                 "per Fred A. Swenson, Treas."

The payee E. T. Swenson is a brother of Fred A., who assumed to act for the company. The court found that Fred "signed [the quoted instrument] in the name of said company, but without any authority of the board of directors or stockholders of said company, and without the knowledge or consent of said board." As proof of a valuable consideration having been given for the note, plaintiffs introduced, and the court received, in evidence a check executed by said E. T. Swenson to "G. O. Miller Co." in the principal sum stated in the note. That check was credited to the G. O. Miller Company at the bank upon which it was drawn. Both companies used a rubber stamp indorsement. The stamp reads as follows:

"Pay to the order of

WHITE ROCK STATE BANK

White Rock, Minn.

G. O. MILLER TELE. Co.

G. O. MILLER Co.

G. O. Miller, Pres.

E. T. Swenson, Sec'y.

F. A. Swenson, Treas.

G. O. MILLER."

The deposit slip including this item bears the heading of G. O. Miller Co. as depositor. It is dated the same day as the check, June 29, 1926. The note, as will be noted, bears date July 1, 1926. No payments have been made upon it, nor does it appear that any demand for payment was ever made either as to principal or interest until the bringing of the present action. Apparently the note lay dormant until some time after the death of G. O. Miller in May, 1933. The present action was brought just a few days before the note would have been barred by the statute of limitations. In addition to bringing this action to enforce the payment of the mentioned note, plaintiffs filed it as a claim against the estate of G. O. Miller, seeking recovery upon the theory that at a joint meeting of the stockholders of the two companies held in July, 1927, Mr. Miller had agreed to assume the obligations of both companies in consideration of all the other stockholders' surrendering all the stock held by them. There is no question but that at the time of this meeting both companies were in serious financial difficulty. They were hopelessly insolvent, and stockholders' liability was impending. The Swensons each owned 55 shares in these corporations. The corporate minute book included the minutes of both of them. From this it appears that Miller made a proposition to the other stockholders in the alternative: (1) That he would surrender all of his stock (75 shares in each company of the par value of $100) and contribute $17,000 in cash provided they, the other stockholders, would take the corporate enterprises in hand and agree to pay and discharge the obligations thereof; (2) that if this were not acceptable to them he would, upon their surrender of their stockholdings, take in hand both corporate enterprises and see to it that the obligations of both were met and discharged. The latter proposition was the one adopted by the parties. In their proofs of claim filed in probate court the respective plaintiffs affirmed that the Miller estate was liable by virtue of a signed statement reading:

"Aug. 11, 1927.

"This is to certify that upon receipt of stocks of the G. O. Miller Co. and the G. O. Miller Telephone Co. I agree to assume all obli-

gations of said companies after balancing the accounts of each stockholder.

"(Signed) G. O. Miller."

What has been said with respect to the $1,500 note applies equally well to the two notes involved in the second action. The only exception respecting a distinction is that one of the notes there involved bears the signature "G. O. Miller Tel. Co. per Fred A. Swenson" and is payable to him, the same individual who assumed to act for the corporation. As to the other note, the signature is the same except that E. T. Swenson assumed to act as secretary for the corporation. That note also is by its terms made payable to the same payee, Fred A. Swenson. The Swensons are brothers, both were stockholders and directors in both companies and as such equally interested in the difficulties facing these corporate enterprises. E. T. Swenson was secretary and Fred A. the treasurer of both companies.

Plaintiffs' counsel concede that "the business and affairs of the two companies were so commingled that it is difficult, if not impossible, to untangle them. The officers apparently made no effort to keep the affairs of the two companies separate."

As to the $1,500 note involved in the first case, we think the record abundantly sustains the court's findings. The check issued, the deposit made, and the credit given therefor by the bank all go to prove that the money went directly to the G. O. Miller Company. There is no proof upon which a finding to the contrary could stand. Nor is there any showing that the telephone company received a single dollar of this money.

The two notes involved in the second action are said to have been renewals. Here, too, we find the same difficulty as that admitted by plaintiffs' counsel to exist. So it is not surprising that the court came to the conclusion that plaintiffs have failed to "overcome the necessity of rebutting the presumption of *prima facie* invalidity" of the notes here involved. Upon plaintiffs rested the duty of overcoming the presumption mentioned by the court. Our only duty then is to investigate the record and determine from it

whether the facts stated are such as to compel a conclusion directly opposed to that reached below.

■ Both actions are founded upon express contracts. The question of unjust enrichment or liability *quasi ex contractu* is of course not in either case. This is clearly so, for the form of action in each case, as made by the pleadings and the course of trial as well, precludes recovery upon any other theory. That is why the rule so well stated in Restatement, Agency, § 104, comment (d), is inapplicable here. "A person not subject to liability because of ratification may have received benefits from the act of a purported agent under such conditions that it is inequitable for him not to pay a third person for their value. The liability in such cases is dependent upon the principles of quasi contract."

In Leonard v. Burlington Mut. L. Assn. 55 Iowa, 594, 8 N. W. 463, the action was brought on written instruments, but the complaint was later amended to include a count as for money had and received. Apparently no objection was made to the amendment. The third person, while not permitted to recover on the instruments, was allowed to recover on the count for money had and received. And Pauly v. Pauly, 107 Cal. 8, 40 P. 29, 48 A. S. R. 98, is practically the same. There the complaint as originally drawn contained counts on the written instruments and also counts as for money had and received. Obviously these cases lend plaintiffs no aid.

■ The promissory notes involved in these cases were executed without authority. The court so found, and plaintiffs do not question that finding. But, to overcome that hurdle, they insist "that the proceeds representing the principal of the note was for the benefit of the corporation, and that the note was not executed for the personal use of the officers," hence "the note is valid and the *prima facie* rule of invalidity is overcome." (The quoted statement is from plaintiffs' brief and refers to the $1,500 note, the foundation for the first cause of action.) The difficulty we find in adopting plaintiffs' view is that E. T. Swenson, to whom the note is payable jointly with his wife, in his own handwriting issued his check for $1,500 payable to "G. O. Miller Co." He was then secretary of both companies. If a loan was intended to the telephone company, how

does it come that he deliberately wrote his check to the G. O. Miller Co. instead? Furthermore, the bank deposit slip is also in his own handwriting and is dated the same day as the check. Both the deposit slip and the deposit itself were made to the credit of "G. O. Miller Co."

It is next claimed with regard to this note that it appears upon the records of the company (evidently referring to the Bills Payable Register, exhibit C) as its obligation. That book clearly indicates that the bills payable of both companies, including G. O. Miller personally, are also there listed; and, what is even more important, in most instances the register does not indicate who is the obligor. Page after page in this book conveys no information on this important point. Thus we find upon pages 63-64 of that register, mostly in the handwriting of the secretary, E. T. Swenson, various lists of notes. The page starts with the heading "1926," immediately underneath appears "April 19," then follows March with two dates, then below April 12, 19, 14, and 30. There are two items in May and six entries in June, the first two as of June 1, the next two as of June 8, the next June 21, and the last June 3. July starts with the 13th, then follow items under July 12, 19, 8, and 29. The next items are August 9 and 23, and then follows July 1, with the entry opposite that date, "E. T. Swenson 6% New note 12/31/26 1500.00." This entry does not appear to be in the handwriting of E. T. Swenson. It is the last entry on that page and is made below the last ruled line thereon. Obviously it could not have been entered under its designated date. That portion relating to "new note" and its apparent date is in the handwriting of still another person. These entries are of extremely doubtful probative force in any event. Nowhere as to this note is there a single indication by what company the issued obligation was to be met.

As we have seen, the records, as far as they go, indicate the loan was made to the G. O. Miller Co. and not to defendant G. O. Miller Telephone Company.

■■■ "Officers of a corporation may contract with it, but such contracts are viewed with suspicion by courts and will be scruti-

nized closely and set aside if not perfectly fair, and beneficial to the corporation. In such contracts officers are held to those rules of fairness and good faith which courts of equity impose upon trustees." 2 Dunnell, Minn. Dig. (2 ed. & Supp. 1932) § 2118, and cases cited under note 37.

"A corporation is not chargeable with notice when the character or circumstances of the agent's knowledge are such as to make it improbable that he would communicate it to his principal, as, for example, when he is dealing with the corporation in his own interest, or where for any reason his interest is adverse." *Id.*, § 2119, and cases cited under note 41.

Under the facts and circumstances here appearing we cannot say, as a matter of law, that the validity of this note has been so far established as to compel a holding for plaintiffs.

After all, these corporate enterprises were separate entities. Liability cannot be fastened upon this defendant upon mere suspicion. We think proof of ratification is wholly lacking. When this note was executed there were, as we have seen, several stockholders, the Swensons among them. Surely they ought to know, having had much to do with the keeping of this record themselves, what they intended to do at the time these entries were made and the transactions consummated.

■ Taking up next the two notes involved in the second action, we find that the note for $966.60, bearing date July 8, 1926, was, as has already been stated, signed thus: "G. O. Miller Tel. Co. per Fred A. Swenson." The payee is the same Fred A. Swenson. Under date July 8 of the bills payable register, and apparently in Fred A. Swenson's own handwriting, there appears this entry: "Fred A. Swenson 966.60." The date of that entry appears upon this book between the entries of July 19 and July 29, both of the last mentioned entries being in the handwriting of E. T. Swenson. Nowhere is there any indication that this was an obligation of the telephone company.

"A note executed by an officer of a corporation and payable to himself is presumptively invalid, but such presumption may be

rebutted by proof that it was made in the business and for the use and benefit of the corporation." 2 Dunnell, Minn. Dig. (2 ed. & Supp. 1932) § 2118, and cases cited under note 38.

The next note is one for $450 and bears date February 1, 1927. On pages 67-68 of the bills payable register appear items of notes issued from December 22, 1926, to and including July 18, 1927. This note does not appear as an obligation within those dates. But we do find on pages 61-62 the following entry under a "1926" heading: "March 7 Fred A. Swenson 6% 450.00." That entry also appears to be in the handwriting of Fred A. Swenson, and follows an entry bearing date March 10. All other entries on page 61 appear to be in the handwriting of E. T. Swenson. Here, too, we find the same difficulty, there is nothing whatever to which one can tie defendant company.

■ Plaintiffs' assertion that there is shown by the present record "acquiescence, ratification and estoppel" on defendant's part cannot be sustained. A careful examination thereof fails to disclose any foundation for either or any of such claims. Rather the opposite appears. This is well summarized by the court in its memorandum as follows:

"Instead of ratification and acquiescence by the holder of practically all of the stock after the arrangement of surrender (see page 210 of the minute book), we find this situation, that in the list of notes marked 'assumed by the G. O. Miller Telephone Co.,' set forth on page red numbers Nos. 71-76, in Exhibit C [Exhibit C is the Bills Payable Register], these notes do not appear."

For a period of more than six years after these notes were executed and while Mr. Miller was still living, nothing apparently was done to collect either interest or principal. Only after his mouth was closed in death and only a few days before the statute of limitations had run did these notes, as far as the present record discloses, appear upon the horizon as apparent obligations of the telephone company. We are in complete accord with the views of the court "that the long delay has deprived the court of testimony of the one man who could give his version of these transactions."

There are other assignments of error, but upon examination thereof we fail to find anything requiring special discussion.

Both judgments are affirmed.