ILLINOIS CENT. R. CO. *v.* ROGERS & HURDLE.

[76 South. 686, Division A.]

1. CARRIERS. *Shipments of live stock. Notice of loss.*

Where under a contract for shipment of live stock, there was a provision requiring notice of claim for damages within one day after delivery at destination, as a condition precedent to a right of recovery, such provision was sufficiently complied with, where before accepting the shipment of stock at destination, the shippers required the agent of the terminal carrier to note on the freight bill that "shipper received stock under condition stock in bad shape account overrun and lack feed and water."

2. CARRIER. *Damages to stock. Time for bringing suit. Waiver.*

Where in the correspondence between the shipper and the carrier in reference to a claim for damages to a stock shipment, there was no reference to the six months' limitation for bringing suit contained in the bill of lading, or extension of time granted or requested, in such case there was no waiver of such limitation by the correspondence.

3. COMMERCE. *Interstate commerce. Shipment between points in state.*

Where a bill of lading shows the routing to be outside of the state, though the points of origin and destination both be within the same state, under the decision of the United States supreme court, it is an interstate shipment, governed by the Carmack Amendment (Act June 29, 1906, ch. 3591, sec. 7, Pars. 11, 12, 34 Stat. 595; U. S. Comp. St. 1916, secs. 8604 A-8604AA.).

4. CARRIERS. *Carmack amendment. Applicability.*

The Carmack Amendment applies although suit is not against the initial carrier, based on the bill of lading, but against the connecting carrier.

5. CARRIERS. *Bills of lading. Shortening time for suit.*

The provision in a bill of lading on an interstate shipment of mules, requiring suit to be brought for damages within six months, was valid and binding and under the evidence in this case was not waived by the carrier.

6. EVIDENCE. *Admission. Stipulations as to liability of shippers.*

The signing by shippers of a bill of lading stating that they have had the option of shipping at cärriers' risk at a higher rate, but have elected to make a contract stipulating that suit must be brought within six months and accept the lower rate, is an admission that they were offered by the initial carrier, two separate contracts, and that they chose the one containing the stipulation in consideration of the reduced rate.

7. CARRIERS. *Stipulations as to liability. Burden of proof.*

In such case, before the shippers can avoid the stipulations in the contract the burden of proof is upon them to show that they were not offered the choice of rates referred to in such contract, the recitals in the contract being *prima-facie* evidence of the fact that this choice was offered the shippers.

8. EVIDENCE. *Admissions in bill of lading.*

Testimony that the shippers accepted and signed the conditional bill of lading without reading it is not sufficient to contradict written admissions contained therein that the shippers were offered choice of rates depending on the liability of the carrier.

9. COURTS. *Decisions of United States courts followed by state courts.*

Where a contract of shipment is an interstate one the provisions of the Carmack amendment governs the liability, in determining this liability the state courts are governed by the decisions of the United States supreme court.

APPEAL from the circuit court of Marshall county.
HON. J. L. BATES, Judge.

Suit by Rogers & Hurdle against the Illinois Central Railroad Company. From a judgment for plaintiffs, defendant appeals.

The facts are fully stated in the opinion of the court.

*Mayes, Wells, May & Sanders,* for appellant.

The first question to which we direct the attention of the court is: Was this shipment moving from New Albany, Mississippi, into and through the city of Memphis, Tennessee, in order to reach its destination at Leland, Mississippi, over two different lines of connecting

carriers, an interstate shipment, subject to and to be controlled by the Act of Congress and the decisions of the Federal courts?

We maintain that it was, and that a shipment from one point to another, both within the state, over connecting lines, which necessarily pass through a portion of another state, is an interstate shipment, within the meaning of the Federal Act as amended. See the following authorities: *Hanley* v. *R. R. Co.,* 47 L. Ed. (U. S.) 333; *Lord* v. *Steamship Co.,* 26 L. Ed. (U. S.) 224; *Steamship Co.* v. *R. R. Co.,* 18 Fed. 10; *Warehouse Co.* v. *R. R. Co.,* 41 N. W. 1047; *Sternberger* v. *R. R. Co.,* 2 L. R. A. (N. S.) 105; *Liebengood* v. *R. R. Co.,* 28 L. R. A (N. S.) 985; *C. B. Co.* v. *R. R. Co.,* 132 Pac· 975.

That the shipment in question was over two connecting lines and necessarily passed into and out of the city of Memphis, Tennessee, in the course of transportation from the initial point at New Albany, Mississippi, to its destination at Leland, Mississippi, abundantly appears, from the record, and if upon the authorities cited *supra,* it is adjudicated to have been an interstate shimpent, the rights of the parties to the contract of affreightment must be governed and controlled exclusively by the Act of Congress regulating commerce between the states, and the decisions of the Federal Courts construing those acts. *Express Co.* v. *Croninger,* 37 L. Ed. (U. S.) 314; *R. R. Co.* v. *Miller,* 57 L. Ed. (U. S.) 323; *R. R. Co.* v. *Harriman,* 57 L. Ed· (U. S.) 6900; *Express Co.* v. *Burke and McGuire,* 61 So. (Miss.) 212; *Jones* v. *Express Co.,* 61 So. (Miss.) 165; *R. R. Co.* v. *Woodruff Mills,* 62 So. (Miss.) 171; *R. R. Co.* v. *Mugg,* 50 L. Ed. (U. S.) 1011; *R. R. Co* v. *Abiline Co.,* 51 L. Ed. (U. S.) 553; *American Packing Co.* v. *U. S.,* 52 L. Ed. (U. S.) 681;) *R. R. Co.* v. *Carl,* 57 L. Ed. 683; *Hart* v. *R. R. Co.,* 28 L. Ed. (U. S.) 717; *R. R. Co.* v. *U. S.,* 215 Fed, 380; *R. R. Co.* v. *U. S.,* 215 Fed. 380; *R. R. Co.* v. *Kirby,* 56 L. Ed. (U. S.) 1033; *Express Co.* v. *N. M. Co.,* 57 L. Ed (U. S.) 600; *R. R. Co·*

v. *Rankin*, 241 U. S. 319; *R. R. Co.* v. *Prescott*, 240 U. S. 632; *G. F. & A. R. R. Co.* v. *Blish Milling Co.*, 241 U. S. 190; *R. R. Co.* v. *Wallace*, 56 L. Ed. (U. S.) 516; *Berwind-White, etc., Co.* v. *Steamship Co.*, 183 Fed. 257; *Cobb* v. *Brown* 193 Fed. 958; *Spola* v. *R. R. Co.*, 92 Atl. 379; *R. R. Co.* v. *Carl* (U. S.), cited *supra*.

It has been held by the supreme court of the United States, and by many other Federal courts, that a provision in a live stock contract, or bill of lading, covering an interstate shipment, to the effect that as a condition precedent to any right to recovery for damage for delay, loss or injury to the stock, the shipper must give notice in writing of his claim therefor before the stock are moved and mingled with other stock, or within a specified time, ranging from one day to thirty days, was valid and binding upon the shipper, and must be complied with and that failure to do so, would bar any right to recover damages for any breach of the contract. *R. R. Co.* v. *Harriman*, cited *supra*; *R. R. Co.* v. *Varnville Fur. Co.*, 59 L. Ed. (U. S.) 1137; *R. R. Co.* v. *Robinson*, 58 L. Ed. (U. S.) 901; *R. R. Co.* v. *Moore*, 58 L. Ed. (U. S.) 906; *R. R. Co.* v. *Cranmer*, 58 L. Ed. (U. S.) 697; *R. R. Co.* v. *Hooker*, 58 L. Ed. (U. S.) 868; *M. T. Co.* v. *R. R. Co.*, 107 Fed. *Inman* v. *R. R. Co.*, 159 Fed. 960; *Clegg* v. *R. R. Co.*, 203 Fed. 971; *Kidwell* v. *R. R. Co.*, 208 Fed. 1; *Smith* v. *R. R. Co.*, 87 S. W. 9; *Carr* v. *R. R. Co.*, 48 L. Ed. (U. S.) 1053; *R. R. Co.* v. *Phillips*, 87 Pac. 470; *I. C. R. R. Co.* v. *Davis*, 72 So. (Miss.) 874.

In the light of the Federal decisions therfore, it cannot be questioned that if this was an interstate shipment all state laws which declare contracts invalid, which require the bringing of an action within less than the statutory period, were superseded by the Federal law. *Ingram* v. *Weir*, 166 Fed. 328; *R. R. Co.* v. *Soper*, 50 Fed. 879; *Express Co.* v. *Caldwell*, 22 L. Ed. (U. S.) 556; 6 Ross notes to U. S. Reports, 420; *Cox* v. *R. R. Co.*, 49 N. E. 97, cited in Harriman case; 6 Cyc. 508 cited in Harriman case; *I. C. R. R. Co.* v. *Davis*, 72 So. (Miss.) 874, cited *supra*.

There remains to be considered by this court, section sixteen of the contract ·of affreightment, which requires actions for damages to property to be brought within six months from the date of delivery at its destination. The record of this case shows that this action was not brought until after the expiration of nine months or more after the date of the delivery of the property at its destination, and section 15 of the shipping contract was especially pleaded by the defendant in the ·court below in bar of this action.

In the case of *Howard* v. *Chicago, etc., R. R. Co.* (Mo. App.), 184 S. W. 906, the court held that when goods are shipped between points in the same state, and in order to reach the carrier's yards at destination, they are moved into and out of another state, the shipment is in interstate commerce so as to render valid a stipulation requiring the action for damages to the property to be bought within six months from the date of delivery at its destination. Under the Carmack amendment a carrier may, by contract, require an action against it for loss or injury to an interstate shipment, to be brought within a reasonably stated time. *Nashville, etc., R. R. Co.* v. *Truitt Co.*, 86 S. E. (Ga.) 421; *Ray* v. *M. K. & T. Co.*, 133 Pac. (Kan.) 847; *Miller* v. *Atchinson, etc., R. R. Co.*, 156 Pac. (Kan.) 780; *Harrington, etc., R. R. Co.* v. *Wichita, etc. R. R. Co.*, 156 Pac. (Okla.) 631; *M. K. & T. R. R. Co.* v. *Harriman*, 57 L. Ed. (U. S.) 690.

A condition in a contract for an interstate carriage of live stock, that a carrier should not be answerable for loss or damage unless action was begun within six months, is reasonable and not precluded by the Carmack Amnedment. *Baldwin* v. *Chicago, etc., R. R. Co.*, 156 N. W. (Ia.) 17; *Enright* v. *Atchinson, etc., R. R. Co.*, 152 Pac. (Kan.) 629; *Sims* v. *M. etc., Ry, Co.*, 163 S. W. (Mo.) 275; *Thompson* v. *Atchinson, etc., R. R.*

*Co.,* 185 S. W. (Mo.) 1145; *Donoho* v. *M., etc., R. R. Co.,* 187 S. W. (Mo.) 140; *St. L., etc., R. R. Co.* v. *Pickens,* 151 Pac. (Okla.) 1055; *St. L., etc., R. R. Co.* v. *Tallifaero,* 156 Pac. (Okla.) 359.

The stipulation for an interstate transportation of property by a carrier requiring suit for damages thereto to be brought within six months after the cause of action accrues, is to be determined under the common law, regardless of the statute of limitations of the state in which the action is begun. *St. L., etc., R. R. Co.* v. *Patterson,* 156 Pac. (Okla.) 216 Reported in Advance Sheets only.

It therefore appears, that the stipulation in the contract of affreightment which is under consideration in this case, was a valid stipulation and it also appears that the requirement that any suit for damages under the contract should be filed within a period of six months from the time of the delivery of the shipment, was not complied with and we respectfully submit that this failure on the part of the plaintiff in the court below to observe the requirements of the contract, was a bar to his right of action.

Coming now to a consideration of the claim made in the court below, that the provisions of the shipping contract paragraphs 13 and 16, had been waived by the defendant, we respectfully submit that the highest court in the land has decided that a carrier has no right to waive any of the provisions in its contract for interstate shipments, and we call the court's attention to the case of. *G. F. A. R. R. Co.* v. *Blish Milling Co.,* 241 U. S. 190, decided May 9, 1916, wherein the following language appears: "It is urged, however, that a carrier in making misdelivery converted the flour and this abandoned the contract, but the parties could not waive the terms of contract under which the shipment was made pursuant to the federal act, nor could a carrier by its conduct, give the shipper the right to ignore

these terms which were applicable to that contract and hold the carrier to a different responsibility from that fixed by the agreement made under the published tariff's and regulations. A different view would antagonize the plain policy of the act and open the door to the very abuses at which the act was aimed. *R. R. Co.* v. *Kirby,* 225 U. S. 135; *R. R. Co.* v. *Carl, Supra; R. R. Co,* v. *Robinson,* 233 U. S. 173; *R. R. Co.* v. *Prescott, supra.* We are not concerned in the present case with any question save as to the applicability of the provision and its validity, and we find it to be both applicable and valid. Effect must be given to it. See, also, *Clegg* v. *R. R. Co.,* 203 Fed. 971; *Assurance Co.* v. *Building Assn.,* 46 L. Ed.(U. S.) 213; *Sullivan* v. *Ins. Co.,* 94 Pac. 676; *Jennings* v. *Smith,* 106 Fed. 139; *R. R. Co.* v. *Kirkham,* 65 Pac. 261; *McElvain* v. *R. R. Co.,* 180 S. W. 1018; *Phillips* v. *R. R. Co.,* 59 L. Ed. (U. S.) 774; *R. R. Co.* v. *Kirby,* 56 L. Ed. (U. S.) 1033; *R. R. Co.* v. *Robinson,* 58 L. Ed. (U. S.) 901; *Bannaka* v. *R. R. Co.,* 186 S. W. 7; *Olivet Bros.* v. *R. R. Co.* 96 Atl. 584.

We, therefore, respectfully submit that on the authorities and on the undisputed facts which appear in this record, the judgment of the court below should be reversed and judgment entered here in favor of the appellant.

*Lester G. Fant,* for appellee.

Our contention is that the Carmack Amendent does not apply to a shipment of live-stock originating in the state of Mississippi, even though the shipment, in order to reach its destination, left the state of Mississippi and came back into the state in the usual course of business. The language of the Carmack Amendment expressly excludes shipments originating in the state of Mississippi with the destination in the state of Mississippi. This language is quoted in 107 Mississippi, at pages 784, 785, in the case of the *Railroad Co.* v. *Lyon & Co.,* as follows:

"It has been held that a shipment will be considered interstate when it originates in one state and its desti-

nation is the same state, provided that the shipment necessarily has to go through another state in order to reach its destination; but it has never been held that a railroad company taking a shipment at one point in a state for delivery at another point in the same state can, at its pleasure, divert the shipment and take it outside of the state when they have means of transportation which should carry the freight entirely within the borders of the state in which it originated.

The interstate Commerce Act as amended by the Carmack Amendment does not in any way controvert the rights and liabilities of the parties under this shipment.

If in the case at bar they have been deprived of their right to sue, the Federal constitution would be infringed and they would be deprived of their substantive right without process of law. But even though the court should hold that this is such a shipment, then the Carmack Amendment would cover, we maintain, that the judgment of the lower court is right in view of all the federal decisisions that the decision of the lower court should stand, because the supreme court of the United States, in its most recent decision in regard to the Carmack Amendment in the case of *Chicago & F. A. R. Co.* v. *Blesh Milling Co.,* 241 U. S. 190-199; *Chesepeake & O. R. Co.* v. *McLaughlin,* the latter decided December 4, 1916. In these two cases the question of giving written notice and the time in which suit should be brought are discussed. In the reasoning of the judges giving these two decisions it is held that the stipulation of the contract for the time to give notice is addressed to a practical exigency and is to receive a practical construction, and that the special circumstances of the case may excuse a strict compliance by the shipper, and especially so when, as in the instant case, no prejudice to the carrier has resulted. Whilst it is true that, under the Act of Congress, the shipper and the carrier may not waive the substantive terms of the contract of shipment so as to release each other from the responsibility, or hold the carrier to a different re-

sponsibility from that fixed by the agreement made under the published tariffs, yet it does not follow it is respectfully submitted, that the carrier may not waive or modify the stipulation requiring notice of a claim for damages, where the waiver would not contravene the policy of the Act of Congress or result in prejudice to the carrier.

A party may waive any provision either of a contract or of a statute intended for his benefit, and a right which he might otherwise have under the constitution of the United States, when such a waiver does not contravene public policy; and the two letters of the Railroad Company's freight claim agent, appearing in the record, assume that the shipper had complied with the stipulation requiring notice of his claim or that if there had been any failure to strictly comply, the same had been waived by the railroad company. *Pierce* v. *Sommeret R. Co*, 171 U. S. 641; *Shuttle* v. *Thompson,* 15 Wall. 151; *Smythmeyer* v. *United States,* 147 U. S. 358; *Pfyfe* v. *Elmer* 145 N. Y. 102, 104.''

You will also note from the record that this local agent stated that he would recommend the payment of that claim as he thought it was just and the Railroad Company owed it. This is a circumstance that shows a reasonable compliance with the notice clause, especially when you take into consideration the fact that on the 28th, or the fourth day from the delivery of the stock, three affidavits were furnished this same agent.

The only other question then would be the question of time when the suit was brought. The shipper through his attorney was endeavoring to settle this claim. The Railroad Company before the six months had expired was in correspondence with the shipper and writing letters, as is shown by the record, which gave the shipper and his attorney a right to expect a favorable outcome of the negotiations for settlement. In order to avoid cost to the Railroad Company and delay to the shipper, suit was not brought until after the six months had

expired but we maintain without fear of successful contradiction, that the Railroad Company by every court, either state or Federal, would not be allowed by their correspondence to lull the shipper to sleep until after the six months had expired, and then claim that the action was barred.

There is however this fact clearly established in the record and uncontradicted; and that is that when the shipper, Mr. Rogers, applied to the railroad agent at New Albany to ship this cattle, that he was not given any discretion in regard to shipping under the terms and stipulations of the live-stock contract shown by this record. He testified most positively that there was no other rate offered him by which he could ship his cattle. This is not denied by the Railroad Company.

SYKES, J. delivered the opinion of the court.

Rogers & Hurdle, appellees, sued the Illinois Central Railroad Company for one thousand dollars damages, for injuries to a carload of twenty-six mules shipped by appellees from New Albany to Leland, both points within the state of Mississippi. The bill of lading shows upon its face that the car was to be transported from New Albany, Miss., to Memphis, Tenn., over the St. Louis & San Francisco Railroad Company, and at Memphis, Tenn., this carrier was to deliver the car to another carrier to be transported to the point of destination, Leland, Miss. The car was in fact delivered at Memphis to the Yazoo & Mississippi Valley Railroad Company for transportation upon its line to Leland. There is an agreement shown in the record between counsel for appellant and appellee that the Illinois Central Railroad Company in this case stands in the shoes or place of the Yazoo & Mississippi Valley Railroad Company; that if the Yazoo & Mississippi Valley Railroad Company is liable then the Illinois Central Railroad Company is liable. The record also shows that it was the agreement of the initial carrier and the shippers that the shipment

should move by Memphis, Tenn. The car was unduly delayed in transit while in the hands of the Yazoo and Mississippi Valley Railroad Company, which resulted in the injuries herein sued for.

This suit is not against the initial carrier but is against the connecting or terminal carrier. A contract of affreightment, or live stock contract, was duly entered into between the initial carrier and the shippers. Among other things this contract provides:

"The rate charges for the shipments of live stock under the following contract is lower than the rate charged if the shipment is not made under the following contract, but at carrier's risk. The rates of freight are based upon the nature and extent of liability assumed by the carrier. The shipper has the right of election whether to ship live stock under this contract at the lower rate, or not under this contract, but at carrier's risk at a higher rate.

"(1) The company shall transport the following cars of live stock, and the parties in charge thereof, viz. —— cars, said to contain twenty-five head of mules, consigned to W. F. Rogers, Leland, Miss., consignee, from New Albany, Miss., station, to Memphis, Tenn., station, on the line of this company, and if the destination is beyond the line of this company shall deliver the same at said station to a carrier whose line may form a part of the route to Leland, Miss., the place of destination, at the reduced rate of —— per car, or ——, which is less than the rate for shipments at carrier's risk. . . ."

"(13) As a condition precedent to recovery of damages for any death, the shipper shall give notice in writing, of his claim, to some general officer of the company, or the nearest station agent, or the agent at destination and before the live stock is mingled with other live stock, and within one day after its delivery at destination, so that the claim may be promptly and fully investigated, and a failure to comply with this condition shall be a bar to the recovery of any damages for such death, loss or injury or delay. . . ."

"(16) No suit or action for the recovery of any claim for damages for death, loss, injury or delay of the live stock shall be sustainable, unless begun within six (6) months next after the cause of action shall accrue, and if begun later, the lapse of time shall be conclu|sive evidence against the validity of such claim, any statute of limitation to the contrary notwithstanding.

"(17) The shipper acknowledges that he had the.option of shipping the live stock at carrier's risk, at a higher rate, or under this contract, at a lower rate, and that he has elected to make this contract and accept the lower rate."

The testimony of Mr. Rogers, who signed the contract, is to the effect that nothing was said at the time that he signed the same between him and the agent as to any other contract of affreightment that he might have made for the transportation of these mules. His testimony also shows that he had been engaged in the business of shipping cattle and stock for a number of years.

The case was tried by agreement before the circuit judge, acting as both judge and jury. There was no controversy as to the measure of damages. The appellant railroad company, defendant in the court below, presents the same defense here as there, viz., that the contract entered into between these parties was for an interstate shipment of live stock, and that the provisions in the bill of lading govern; that under clause 13 of said bill of lading a written claim for damages was not made within one day after the stock reached the point of destination; that under clause 16 of the bill of lading this suit was not filed within six months after the cause of injury accrued.

The testimony in the record relating to these questions is as follows: Upon the receipt of the stock at Leland, Miss., before the shippers would accept the same, they had the agent of the railroad company to note on the freight bill that the "shipper received stock under condition stock in bad shape account overrun and lack feed and

water." We think this is a sufficient compliance with clause 13.

The testimony shows that there was some correspondence between the shippers and the general freight agent of the railroad company about the injuries to the stock and a settlement therefor. There is nothing in this correspondence specifically referring to the six months' limitation for bringing suit contained in the bill of lading. No extension of this time was requested or granted in this correspondence. Therefore there could be no waiver of this limitation by virtue of this correspondence. Upon the trial, judgment was rendered in favor of plaintiffs for the amount sued for, from which judgment this appeal is prosecuted.

The determinative question in this case is whether or not this was an interstate shipment of stock and is governed by the Carmack Amendment to the Interstate Commerce Act of Congress. Counsel for appellees contend that since this amendment uses the terms, "that any common carrier, railroad, or transportation company receiving property for transportation from a point in one state to a point in another state, shall issue a receipt," etc., and as the initial point and the point of destination were both within the state of Mississippi, this amendment does not govern. If this contention were correct, then the judgment of the lower court would be affirmed. However, the bill of lading in this case shows that the shipment moved from a point in Mississippi to a point in Tennessee, and thence to the point of destination in Mississippi.

Where a bill of lading shows the routing to be outside of the state, though the points of origin and destination both be within the same state, under the decisions of the United States supreme court it is an interstate shipment. "The transportation of these goods certainly went outside of Arkansas, and we are of opinion that in its aspect of commerce it was not confined within the state." *Hanley* v. *Railroad Co.*, 187 U. S. 617, 23 Sup. Ct. 214, 47 L. Ed. 333. In this same opinion Mr. Justice HOLMES

quotes with approval from the case of *Steamship Co.* v. *Railroad Co.* (C. C.), 9 Sawy. 253, 18 Fed. 10, as follows:

"'To bring the transportation within the control of the state, as part of its domestic commerce, the subject transported must be within the entire voyage under the exclusive jurisdiction of the state.'"

These cases are decisive of the question that this shipment was an interstate shipment.

It is argued by counsel for appellee that the shipment could have moved wholly within the state of Mississippi, between the point of origin and the point of destination. While this may be true, at the same time the contract of affreightment routed the shipment *via* Memphis, Tenn. It was not left optional with the initial carrier to route the shipment. The Carmack Amendment was intended to and governs all interstate shipments. *Express Co.* v. *Croninger,* 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N.S.) 257; *Railroad Co.* v. *Harriman,* 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. 690; *Railroad Co.* v. *Carl,* 227 U. S. 639, 33 Sup. Ct. 391, 57 L. Ed. 683.

It is contended further by counsel for appellees that this amendment does not apply because the suit is not against the initial carrier, based upon the bill of lading, but is one in tort against the connecting carrier. This question is decided adversely to this contention in the case of *Railroad Co.* v. *Blish Milling Co.,* 241 U. S. 190, 36 Sup. Ct. 541, 60 L. Ed. 948, Mr. Justice HUGHES, in answering this contention, saying:

"The connecting carrier is not relieved from liability by the Carmack Amendment, but the bill of lading required to be issued by the initial carrier, upon an interstate shipment, governs the entire transportation, and thus fixes the obligations of all participating carriers to the extent that the terms of the bill of lading are applicable and valid. 'The liability of any carrier in the route over which the articles were routed, for loss or damage, is that imposed by the act as measured by the original contract of shipment so far as it is valid under the act'"
—citing a number of authorities.

The provision contained in clause 16, requiring the suit to be brought within six months, is a valid and bind-ing one, and was in no wise waived in this case by the rail-road company. *Railway Co.* v. *Harriman Bros.*, 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. 690.

The bill of lading or contract of affreightment, duly signed by the shippers, is an admission by them that they were offered by the initial carrier two separate contracts of shipment, and that they chose this one containing the stipulations above referred to in consideration of the reduced rate of carriage.  Before they can avoid the stip-ulations in the contract the burden of proof is upon them to show that they were not offered the choice of rates re-ferred to in this contract.  The recitals in the contract are *prima-facie* evidence of the fact that this choice was offered the shippers.  The testimony shows that the ship-pers accepted and signed the contract without reading it; but this testimony does not arise to the dignity of con-tradicting the written admissions contained in the con-tract.

''The essential choice of rates must be made to appear before a carrier can successfully claim the benefit of such a limitation and relief from full liability.  And as no interstate rates are lawful unless duly filed with the com-mission, it may become necessary for the carrier to prove its schedules in order to make out the requisite choice. But where a bill of lading, signed by both parties, recites that lawful alternate rates based on specified values were offered, such recitals constitute admissions by the shipper and sufficient *prima-facie* evidence of choice.  If in such a case the shipper wishes to contradict his own admis-sions, the burden of proof is upon him.'' *Railroad Co.* v. *Rankin*, 241 U. S. 319, 36 Sup. Ct. 555, 60 L. Ed. 1022, L. R. A. 1917A, 265.

The contract being an interstate one, the provisions of the Carmack Amendment govern the liability.  In deter-mining this liability we are governed by the decisions of the supreme court of the United States, and under these

decisions clause 16 of the bill of lading, which provides that the suit must be brought within six months, is a valid and binding clause. The appellees in this case did not bring suit within the six months provided in the contract, and for this reason cannot recover.

The judgment of the lower court is reversed, and judgment will be entered here for the appellant.

*Reversed, and judgment here.*