# UNITED BROKERS CO. *v.* SOUTHERN PACIFIC CO.*

### (169 Pac. 114.)

**Evidence—Injury to Goods—Ledger Account.**

1.   In a consignee's action against a carrier for damages to a shipment of tomatoes, the consignee's bills and the ledger account showing the amount charged to the parties to whom the tomatoes were sold, presumably on account of their damaged condition, without evidence to show that the items represented the actual damage, were properly excluded.

**Carriers—Damage to Goods—Sufficiency of Notice of Claim.**

2.   In a consignee's action for damages to tomatoes shipped under a bill of lading, requiring notice of a claim for damage to be made in writing to the agent at place of delivery upon arrival, or within 10 days after delivery, the consignee's timely presentation of a written statement of a report of their condition, signed by the carrier's inspector, bearing the name of the consignee, stating the damage and the manner in which it occurred, and that the consignee would repack the tomatoes and claim damages, was a sufficient notice.

> [As to conclusiveness of bills of lading, see note in 30 **Am. St. Rep.** 634.]

**Carriers—Damage to Goods—Stipulation for Notice.**

3.   A stipulation as to notice of a claim for injury to goods while being transported by a common carrier should be given a reasonable construction, and a substantial compliance therewith is all that is required, in view of the object of the requirement of notice.

**Carriers—Damage to Goods—Liability—Presumption.**

4.   Without evidence locating the place of the damage to goods in transit over several connecting lines, and where it appears that the goods were delivered to the initial carrier in good condition, and were delivered by the terminal carrier in a damaged condition, a presumption arises that they were injured on the line of the terminal carrier, and the burden of proof is on it to show that the damage was not done on its line, and that it occurred without its fault or through the shipper's failure to perform his contract.

---

*On validity of stipulation in carrier's contract requiring notice of loss within a specified time, as applied to loss due to carrier's negligence, see note in 17 **L. R. A. (N. S.)** 628.   Reporter.

*Appeal and Error—Certificate to Bill of Exceptions—Amendment.*

5.    Where a transcript of all the evidence was sent up to the Supreme Court with the bill of exceptions, but was not formally made a part thereof, the court, on motion before argument, would allow an amendment of a certificate to the bill of exceptions so as to attach all the evidence.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

This is an action by the United Brokers Company, a corporation, against the Southern Pacific Company, a corporation. From a judgment allowing a nonsuit, plaintiff appealed. Reversed and new trial ordered.

Department 2.    Statement by MR. JUSTICE BEAN.

This action was brought by the plaintiff to recover $394.72, damages to one carload shipment of tomatoes while in transit from Dania, Florida, to Portland, Oregon. The shipment was delivered by Hardie & McFarland on February 23, 1914, to the Florida East Coast Railway Company at Dania, Florida, consigned to C. Schroeder & Company at Waycross, Georgia. A written contract of shipment was entered into between the shipper and the Florida East Coast Railway Company which contained the following provision, being the 8th clause of the printed conditions on the bill of lading:

"Claims for loss or damage must be made in writing to this company within ten days after the arrival of the goods at their place of ultimate destination in case of fruit, vegetables and other perishable articles, and within thirty days after arrival at ultimate destination in case of other freight, and unless claims are so made this company shall not be liable."

As pleaded in defendant's answer the shipment was diverted by the consignors to the plaintiff at Portland, Oregon, while in transit, and the original bill of lading was canceled and a new one issued by the Atlantic

Coast Line Railroad Company at Jacksonville, Florida, which contained the following provision:

"This bill of lading is signed for the different carriers who may engage in the transportation, severally but not jointly, each to be bound by and have the benefits of, the provisions thereof; and in accepting this bill of lading the shipper, owner and consignee of the goods, and the holder of the bill of lading agree to be bound by all of its stipulations, exceptions and conditions, whether printed or written.

"Claims for loss or damage shall be made in writing to the agent at point of delivery promptly after arrival of the property, and if delayed for more than ten days after the delivery of the property, or after due time for the delivery thereof, no carrier hereunder shall be liable in any event."

On and prior to February 23, 1914, the Atlantic Coast Line Railroad Company duly filed, posted, and published its tariffs with the Interstate Commerce Commission as required by law and the shipment was governed by the provisions of the standard form of bill of lading. At the close of plaintiff's case a motion for a nonsuit was granted. Plaintiff appeals.

REVERSED AND REMANDED FOR NEW TRIAL.

For appellant there was a brief over the names of *Mr. H. L. Lyons* and *Mr. Charles M. Hodges,* with an oral argument by *Mr. Lyons.*

For respondent there was a brief over the names of *Mr. Ben C. Dey* and *Mr. William D. Fenton,* with an oral argument by *Mr. Dey.*

MR. JUSTICE BEAN delivered the opinion of the court.

Mr. F. T. Stone, employed by the United Brokers Company, testified to the effect that he examined the car in which the goods were shipped and found them

in bad shape, the crates of tomatoes being pushed together or "jack-knifed" and all mashed; that he called Mr. Criger, the Southern Pacific inspector, who made out an inspection report. Counsel for plaintiff presented a written statement of this report of the car signed by the inspector and, upon request of defendant's counsel, stated that the purpose of the writing was to substantiate the claim for damage, and also claimed that it was "written notice to the company." Upon objection of defendant's counsel the court admitted the document for the purpose of showing damage, but not to show that it was notice to the Southern Pacific Company as required by the agreement between the parties. Over the objection and exception of counsel for defendant the bill of lading issued by the initial carrier, the Florida East Coast Railway Company, was introduced in evidence by the plaintiff. It was produced by the defendant. On its face appear the words "Cancelled 2/27/14" and "Original." The 7th clause under the heading thereon "Conditions Limiting Liability Except for Negligence" reads as follows:

"The amount of any loss or damage for which this company is liable shall be computed on the basis of the value of the property (being the *bona fide* invoice price, if any, to the consignee, including the freight charges, if prepaid) at the place and time of shipment under this contract, unless a lower value has been agreed upon or is determined by the classification or tariff upon which the rate is based, in either of which events such lower value shall be the maximum amount to govern such computation, whether or not such loss or damage occurs from negligence."

The bill of lading shows that the shipment was made from Dania, Florida, to H. C. Schroeder & Co., Waycross, Georgia, and that the goods were received for

transportation "in apparent good order." The witness Mr. Stone stated that the contents of the car revealed that it had received rough handling. The report gave the nature of the damages. It is urged that the claimant should have written a letter of complaint to the railway company. Exhibit "C" introduced in evidence and received as bearing upon the question of damages is as follows:

"Portland, Ore., Mar. 14, 1914.

"Following is list of damaged and partly damaged crates of Tomatoes in car F. G. E. 21645 which arrived East Portland, March 12th, 1914, distributed as follows:

| | | |
|---|---|---|
| Pearson Page Co................... | 31 | cr partly damaged. |
| P. F. & P. Co..................... | 65 | " completely smashed. |
| Page & Son....................... | 24 | " partly damaged. |
| Bell & Co........................ | 19 | "    "    " |
| Glafke & Co...................... | 13 | "    "    " |
| Dryer Bollam.... ............... | 12 | "    "    " |
| Levy & Spiggl.................... | 2 | "    "    " |

166

"Southern Pacific Co.

"By M. F. Criger."

1. Bills and a ledger account were offered in evidence as showing the amount charged to the plaintiff by the parties to whom the goods were sold, presumably on account of the damaged condition of the vegetables. There was no evidence to show that the items represented the actual loss occasioned by the damage to the goods. No person acquainted with the market value of the product was questioned as to the difference between that and the value of the article in its damaged condition, or the difference between the invoice price and the value of the commodity in its injured state, although a witness was called who could apparently have given some light on the matter if he had been interrogated. According to the elementary

rule of law the evidence was properly. excluded.   It is claimed by defendant that there was no proof of damages.   The court ruled that no written notice had been given as required and granted a nonsuit.   The plaintiff, however, showed that the goods had been materially damaged; that 65 crates of tomatoes were "completely smashed" and the invoice price was stated @ $2.00 and $2.50 per crate.   There appeared to be no particular controversy as to this price; therefore, taking the lower price named and applying the rule agreed upon in the bill of lading there appears to be a definite amount of loss shown as to 65 crates. Under the evidence the plaintiffs would be entitled to some damages if the law is in their favor.   Hence, it is necessary to examine the law applicable to the case.

2-4.   The second contention of defendant is that no notice of a claim was given in writing by the plaintiff within ten days after delivery of the shipment as required by the bill of lading.   On the contrary, the plaintiff claims that the written statement made at the time of the arrival and inspection of the car of goods was a sufficient compliance with the requirement and that defendant waived any more formal notice.   The position of defendant is that under the rules of the Interstate Commerce Commission it had no authority to pay any part of the claim unless it was presented within ten days from the date of the delivery of the shipment to the consignee.

Mr. F. T. Stone also stated in substance that when he called the inspector of the Southern Pacific Company they together examined the contents; that "we made out the report"; that Mr. Criger wrote the statement, and "I figured that was writing enough." Though the document is somewhat crude it appears therefrom that it is headed "Report of Inspection of

Damaged Freight, S. P. Co.," bears the date "East
Portland, 3/14/1914," and the name of the claimant
"United Brokers Co." It evidences a shipment of
tomatoes shipped by H. C. Schroeder from Jackson-
ville, Florida, Car Fruit Growers' Express 21645; that
the goods were damaged in a sum "not over $147.30";
that 166 crates of the tomatoes were "mashed, bruised
and crates broken"; that 65 of them were almost an
entire loss; that 55 crates choice grade were invoiced
@ $2.00 f.o.b. Jacksonville; and that 111 crates fancy
grade were invoiced at $2.50 at the same place. The
report also contains a statement of the manner in
which the injury evidently occurred; states that the
consignee will repack the tomatoes, send claim for
damages, and put in claim for repacking; and that the
goods are "not damaged over 40 per cent." It is
marked as "Registered March 28, 1914," and is signed
"M. F. Criger, Inspector," besides bearing other busi-
ness notations. The statement is general and may
require explanation. There was evidence, therefore,
tending to show that within the ten days at the place
of the ultimate destination of the shipment the claim
was made to the Southern Pacific Company in writing.
It appears to be sufficient to inform the carrier that
the consignee claims damages for the entire loss of a
part of the goods and for injury to another portion
and to bring to the attention of the carrier's represen-
tatives the condition of the shipment. We do not con-
sider it a matter of moment which one of the two men
who examined the goods wrote the statement, or
whether it was written by some third person. There
is no requirement in the stipulation quoted that the
shipper or the consignee shall sign the claim. The
written claim does, however, inform the carrier who
the claimant is. No particular form of notice is speci-

fied or made requisite by clause 8, or by the form of the bill of lading approved by the Interstate Commerce Commission. We do not understand that the conditions on a bill of lading are approved by the Interstate Commerce Commission for any fanciful or "red-tape" purpose, but to meet the actual conditions of business life and mutually to protect the carrier and the shipper or consignee in the ordinary every-day affairs of transportation of the products of the country from one place to another: *Georgia, Florida & Alabama Ry.* v. *Blish Mill. Co.,* 241 U. S. 190, 198 (60 L. Ed. 948, 36 Sup. Ct. Rep. 541).

A stipulation as to notice of a claim for injury to goods while being transported by a common carrier should be given a reasonable construction, and a substantial compliance therewith on the part of those for whom the shipment is made is all that is required, having in view the object and purpose of the requirement of notice: 4 R. C. L., p. 796, § 254; *Atchison, Topeka & S. F. R. Co.* v. *Temple,* 47 Kan. 7 (27 Pac. 98, 13 L. R. A. 362); *Hoye* v. *Pennsylvania R. Co.,* 14 Ann. Cas. 414, 417, note. It has been held that formal written notice of the loss sustained is not required, because the purpose of the written notice is fully accomplished when the condition of the shipment is clearly brought to the attention of the representatives of the company. When a shipper on receiving goods in a damaged condition signs a receipt under protest it has been held that that constitutes sufficient notice to the carrier that the shipper intends to enforce his rights: 4 R. C. L., p. 796, § 254; *Hinkle* v. *Southern Ry. Co.,* 126 N. C. 932 (36 S. E. 348, 78 Am. St. Rep. 685).

In *Georgia, Florida & Alabama Ry. Co.* v. *Blish Mill. Co.,* 241 U. S. 190 (60 L. Ed. 948, 36 Sup. Ct. Rep. 541), after some correspondence in regard to a shipment of

a carload of flour, the shipper telegraphed to the manager of the carrier five days after arrival of the goods at destination as follows:

"We will make claim against railroad for entire contents of car at invoice price.   Must refuse shipment as we cannot handle."

It was held that the message fulfilled the requirement of the stipulation in the bill of lading that the claim should be made in writing.   Mr. Justice HUGHES said at page 198 of the opinion in that case:

"In the preceding telegrams, which passed between the parties and are detailed by the state court in stating the facts, the shipment had been adequately identified, so that this final telegram taken with the others established beyond question the particular shipment to which the claim referred and was in substance the making of a claim within the meaning of the stipulation, the object of which was to secure reasonable notice.   We think that it sufficiently apprised the carrier of the character of the claim, for while it stated that the claim was for the entire contents of the car 'at invoice price' this did not constitute such a variance from the claim for the value of the flour as to be misleading; and it is plain that no prejudice resulted. Granting that the stipulation is applicable and valid, it does not require documents in a particular form.   It is addressed to a practical exigency and it is to be construed in a practical way."

The writing in the case at bar is more in detail than the quoted telegram in the case last mentioned and is a substantial compliance with the stipulation in either of the bills of lading referred to in the answer: 10 C. J., pp. 328–336 (§ 489); *Jenkins* v. *Atlantic Coast Line R. Co.*, 83 S. C. 473 (65 S. E. 636).   In our judgment the diversion of the goods in question while in transit does not materially change this case in view of the fact that the defendant pleaded a contract or bill

of lading for the carriage of the goods over the last connecting line. In the absence of evidence locating the place of the damage to goods occurring while in transit over several connecting lines of railroad, the almost universal rule is that a presumption arises, where the goods are delivered to the initial carrier in good condition and are delivered by the terminal carrier in a damaged condition, that they were injured on the line of the last carrier and the burden of proof is on the terminal carrier to show that the damage was not done on its line; that it occurred without its fault, or through the failure of the shipper to perform his contract: 4-R. C. L., § 383, p. 925; 6 Cyc. 490, 491; *Lacey* v. *Oregon R. & N. Co.,* 63 Or. 596, 601 (128 Pac. 999); *Gulf, C. & S. F. R. Co.* v. *Edloff,* 89 Tex. 454 (34 S. W. 414, 416, 35 S. W. 144). In an action against a common carrier for damage to freight, the plaintiff makes out a *prima facie* case by producing the receipt of the initial carrier acknowledging that the freight was delivered to it in good order: *Seller* v. *Steamship Pacific,* 1 Or. 410, 413 (Fed. Cas. No. 12,644); *Hastings* v. *Pepper,* 11 Pick. (28 Mass.) 40, 42; *Canney* v. *American Express Co.,* 222 Mass. 348 (110 N. E. 967, 968); 1 Michie on Carriers, p. 828; Hutchinson on Carriers (3 ed.), § 158.

5. Owing to an extension of time for briefs upon the point we have delayed an expression in regard to a preliminary question. The transcript of all the evidence was sent up to this court with the bill of exceptions, but was not formally made a part thereof. Prior to the argument counsel for plaintiff moved the court to be allowed to amend the certificate to the bill of exceptions and presented an amended certificate so as to attach all the evidence. Under the rule announced in *McGregor* v. *Oregon R. & N. Co.,* 50 Or. 527

(93 Pac. 465, 14 L. R. A. (N. S.) 668), the correction is allowed. We consider the evidence in passing upon the motion for a nonsuit. The trial court erred in granting this motion. It follows that the judgment of the lower court is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED FOR NEW TRIAL.

MR. JUSTICE MOORE, MR. JUSTICE HARRIS and MR. JUSTICE MCCAMANT concur.