[L. A. No. 26080. In Bank. Mar. 2, 1961.]

ERNEST H. THAYER, Respondent, v. PACIFIC ELEC-
 TRIC RAILWAY COMPANY (a Corporation), Ap-
 pellant.

E. D. Yeomans, Walt A. Steiger and John H. Gordon for Appellant.

Dryden, Harrington, Horgan & Swartz and Vernon G. Foster for Respondent.

WHITE, J.—This is an appeal by the Pacific Electric Railway Company from a judgment for the plaintiff in the amount of $3,750 in an action for damages to freight of which defend-

ant was the terminal carrier. The principal question raised is whether the plaintiff complied with the requirement of the bill of lading that in order to recover for damages to freight, a claim in writing must be filed with the carrier within nine months after delivery of the property.

The plaintiff is a Long Beach manufacturer of precision-made aircraft parts. In 1955, he purchased a precision grinding machine that was then located in Illinois, and arranged to have the machine shipped to Artesia, California. The machine was in good condition when delivered to the originating carrier. On March 29, 1955, defendant's agent notified the plaintiff that the machine had arrived. Plaintiff contacted a firm of machinery movers and instructed them to remove it from the railroad car. When they went to pick up the machine on March 30, 1955, the movers observed that the machine was damaged. Before moving it from the railroad car, they contacted the plaintiff who made a personal inspection that same day.

The machine was severely damaged, even though it was bolted to heavy, wooden skids which in turn were bolted to the bottom of the box car. The boards on the bottom of the car had been jerked loose, breaking the blocks which were supporting the machine. The plaintiff had photographs taken of the damaged interior of the car and the damaged machine. After the plaintiff had returned to his office, he telephoned defendant's station agent, Carl Hileman, and complained about the condition of the machine. In response to the complaint, the agent visually inspected the machine and the box car and filled out a standard company form used for the inspection of damages. The plaintiff did not accompany the agent when the inspection was made or when the inspection form was filled out. Hileman's inspection report became a part of defendant's permanent files.

After completing the inspection, Hileman returned to plaintiff's office and there ensued a discussion over the condition of the machine. Before departing, the agent gave the plaintiff standard claim forms, explaining that they could be filled out and returned by plaintiff when the extent of the damage was ascertained. After the photographer had performed his function and Hileman had completed his inspection, plaintiff had the movers take the machine from the box car.

Representatives of the defendant negotiated with plaintiff over the amount due for freight charges, and after plaintiff rejected two bills because of the application of improper rate

and weight standards, the freight charges were fixed at approximately $550. However, in spite of requests by defendant's agents, plaintiff refused to pay the charges. He insisted that the defendant owed him money because of the extensive damage to the machine.

On April 20, 1955, Hileman went to plaintiff's office in an attempt to collect the freight charges. He explained to plaintiff that the damage claim was a separate matter from the freight charges and that the freight bill had to be paid in spite of the damage. The plaintiff continued to object to payment, since he did not want to waive any of his rights to collect for the damages. Finally, while in plaintiff's office, the agent wrote on the freight bill, "Damage on this shipment, 4/20/55, C. D. Hileman." The plaintiff then wrote a check for the amount of the charge and received a copy of the annotated freight bill. Plaintiff testified that he would not have paid unless Hileman had made the above notation on the freight bill. A copy of the annotated freight bill was kept as a permanent record in defendant's offices. The latter's damage claim agent testified that claims for damaged freight are not always filed with his office and that they may be filed "With any agent of the company."

Determination by the plaintiff of the extent of damages to the machine took considerable time. It was necessary to secure cost estimates from machinery repairmen, and then, because of the extent of the damage, ascertain whether it would be cheaper to obtain another machine. After inquiry in the eastern machinery market, plaintiff had his machine repaired at an approximate cost of $3,500.

Plaintiff's attorney wrote to the defendant's claim agent on January 27, 1956, over nine months after the delivery of the machine, and detailed the extent of plaintiff's damages. On February 2, 1956, the claim agent replied to plaintiff's attorney, specifying the documents that must accompany the formal claim and enclosing formal claim forms. The claim agent's letter began, "Referring to your letter of January 27, notifying this company that you represent Mr. Ernest Thayer in matters pertaining to claims for damages to a Cincinnati Grinding Machine, which occurred in transit on or about March 29, 1955. . . ." The letter ended, "On receipt of claim properly supported, as indicated, the matter will be progressed. In replying, please make reference to our above file."

The plaintiff's completed claim forms were received by defendant's claim agent on May 18, 1956. Four days later,

that office sent plaintiff a postal card acknowledging receipt of his formal claim. The latter card was a routine communication sent out when a claim was assigned a claim number. On June 29, 1956, the claim agent formally rejected plaintiff's claim, on the grounds that it had not been filed in writing within nine months, as required by a condition set forth on the bill of lading.

Section 2(b) of the bill of lading provided: "As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, or carrier issuing this bill of lading, or carrier on whose line the loss, damage, injury or delay occurred, within nine months after delivery of the property . . .; and suits shall be instituted against any carrier only within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice. Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid."

Trial was commenced before a jury, but after all the evidence was in the jury was excused by consent of both parties. It was stipulated that if the plaintiff was to recover at all, he was to recover $3,750. Defendant did not deny liability, if notice by the plaintiff complied with the requirements in section 2(b) of the bill of lading. The trial court found that the inspection report made by the agent, Hileman, coupled with the notation made on the freight bill on April 20, 1955, constituted sufficient writings within the requirements of section 2(b) as construed in the federal cases. The trial court was of the opinion that because these two writings became a part of defendant's records, the instant carrier was on written notice that the plaintiff was claiming damages, so that the defendant could make a timely investigation in order to protect itself.

Whether the plaintiff complied with the requirements of section 2(b) of the bill of lading for this interstate shipment presents a question of federal law. (*Chesapeake & Ohio Ry. Co.* v. *Martin*, 283 U.S. 209, 213, 221 [51 S.Ct. 453, 75 L.Ed. 983]; *Insurance Co. of North America* v. *Newtowne Mfg. Co.*, 187 F.2d 675, 680; see *New York Cent. R.R. Co.* v. *F. H. Buck Co.*, 2 Cal.2d 384, 389 [41 P.2d 547]; *American Fruit Distributors* v. *Hines*, 55 Cal.App. 377, 379 [203 P. 821].) There is no question of the validity of such a

provision requiring timely written notice to the carrier, as a condition precedent to the prosecution of a claim for damages to freight. (49 U.S.C. § 20(11); *Chesapeake & Ohio Ry. Co.* v. *Martin, supra*, 283 U.S. 209, 212-213 [51 S.Ct. 453, 75 L.Ed. 983]; *Northern Pac. Ry. Co.* v. *Mackie*, 195 F.2d 641, 642.) Nor may the doctrines of waiver or estoppel be applied against the defendant carrier in order to obviate the requirement of written notice. (*Southern Pac. Co.* v. *Stewart*, 248 U.S. 446, 449-450 [39 S.Ct. 139, 63 L.Ed. 350]; *Loveless* v. *Universal Carloading & Distributing Co.*, 225 F.2d 637, 639; but see *Chesapeake & Ohio Ry. Co.* v. *Martin, supra*, 283 U.S. 209, 222 [51 S.Ct. 453, 75 L.Ed. 983]; *Insurance Co. of North America* v. *Newtowne Mfg. Co., supra*, 187 F.2d 675, 681-682.)

 However, even though as a rule the carrier must be given written notice of a claim within the period specified in the bill of lading, it has been said that the notice requirement, "does not require documents in a particular form. It is addressed to a practical exigency, and it is to be construed in a practical way." (*Georgia, F. & A. Ry.* v. *Blish Mill. Co.*, 241 U.S. 190, 198 [36 S.Ct. 541, 60 L.Ed. 948]; see *Thompson* v. *James G. McCarrick Co.*, 205 F.2d 897, 901.) The principal object of the provision is to give the carrier written notice of the claimed damage to a particular shipment, and written notice that the shipper intends to make a claim for damage to that shipment, so that the carrier may make a timely investigation and protect itself from fraudulent claims. (*St. Louis, I. Mt. & So. Ry. Co.* v. *Starbird*, 243 U.S. 592, 606 [37 S.Ct. 462, 61 L.Ed. 917]; *Loveless* v. *Universal Carloading & Distributing Co., supra*, 225 F.2d 637, 639; *Thompson* v. *James G. McCarrick Co., supra*, 205 F.2d 897, 901; *Minot Beverage Co.* v. *Minneapolis & St. Louis Ry. Co.*, 65 F.Supp. 293, 296.) It has been said that, "The written notice which is to be considered in a 'practical way,' is sufficient if a carrier cannot draw any inference from it other than that a claim for damages was contemplated, even if the writing does not contain a formal demand for damages." (*Delaware L. & W. R. Co.* v. *United States*, 123 F.Supp. 579, 582.) Another federal court has stated that the written documents need be of a minimal character only, ". . . informal in expression, indicating an intention on the shipper's part to claim reimbursement from the carrier for a loss asserted to have occurred in the past. . . ." (*Insurance Co. of North America* v. *Newtowne Mfg. Co., supra*, 187 F.2d 675, 681.)

 Defendant does not contend that it did not have

actual notice of plaintiff's intention to file a claim, and indeed the trial court found that the inspection report and the annotated freight bill were treated by the defendant carrier as the first step by the plaintiff in the filing of his claim. On the instant facts it appears that because of the combination of the inspection report, and the notation on the freight bill made on April 20, 1955, the defendant carrier did have written notice that the plaintiff intended to file a claim for damages to his grinding machine. While it does not appear that the precise factual situation in the case at bar has been ruled upon, the holding of the trial court is supported by the following authorities: (*Georgia, F. & A. Ry. Co.* v. *Blish Mill. Co.*, *supra*, 241 U.S. 190, 198 [36 S.Ct. 541, 60 L.Ed. 948]; *Loveless* v. *Universal Carloading & Distributing Co., supra*, 225 F.2d 637, 638, 641; *Thompson* v. *James G. McCarrick Co., supra*, 205 F.2d 897, 901; *Delaware, L. & W. R. Co.* v. *United States, supra*, 123 F.Supp. 579, 582-583; *Minot Beverage Co.* v. *Minneapolis & St. Louis Ry. Co., supra*, 65 F.Supp. 293, 295-296; *Illinois Cent. R. Co.* v. *Rogers & Hurdle*, 116 Miss. 99, 110-111 [76 So. 686]; *Snyder* v. *King*, 199 Mich. 345, 355-357 [165 N.W. 840, 1 A.L.R. 893]; *United Brokers Co.* v. *Southern Pac. Co.*, 86 Ore. 607, 613-615 [169 P. 114, Ann.Cas. 1918D 814]; *Fisk Rubber Co.* v. *New York, New Haven & H. R. R.*, 240 Mass. 40, 43-44 [132 N.E. 714]; *Everest* v. *Railway Express Agency, Inc.*, 204 Okla. 450, 452-454 [230 P.2d 900]; *West Coast Marketing Corp.* v. *New York, N. H. & H. R. Co.*, 106 N.Y. Supp.2d 15, 16; *Bond Stores, Inc.* v. *Overland Package Freight Service, Inc.*, 171 Misc. 135, 136-138 [13 N.Y.S.2d 928]; *Payne* v. *Smith*, (Tex.Civ.App.) 268 S.W. 243, 244-245; see *Hinkle* v. *Southern R. Co.*, 126 N.C. 932, 939-940 [36 S.E. 348, 78 Am.St.Rep. 685]).

Defendant relies heavily on the decision of the Ninth Circuit Court of Appeals in *Northern Pac. Ry. Co.* v. *Mackie*, 195 F.2d 641. But in *Mackie*, there were no writings sent to the defendant carrier within the nine months' period. Defendant also relies on the holding in *Insurance Co. of North America* v. *Newtowne Mfg. Co.*, 187 F.2d 675, but as in *Mackie*, there was no writing within the specified period. Furthermore, dicta in both cases suggest that the respective plaintiffs would have recovered, had some minimal written document been filed with the defendants within the nine months' period. (*Northern Pac. Ry. Co.* v. *Mackie, supra*, 195 F.2d 641, 642-643; *Insurance Co. of North America* v. *Newtowne Mfg. Co., supra*, 187 F.2d 675, 681.) The following additional cases cited by defendant are distinguishable: (*Chesapeake & Ohio Ry. Co.* v.

*Martin, supra,* 283 U.S. 209 [51 S.Ct. 453, 75 L.Ed. 983] ; *Southern Pac. Co.* v. *Stewart, supra,* 248 U.S. 446 [39 S.Ct. 139, 63 L.Ed. 350] ; *East Texas Motor Freight Lines* v. *United States,* 239 F.2d 417; *Delphi Frosted Foods Corp.* v. *Illinois Cent. R. Co.,* 188 F.2d 343; *Penn State Laundry Co.* v. *Pennsylvania Railroad Co.,* 134 F.Supp. 955).

At the oral argument defendant referred the court to statements in the recently decided case of *Transmix Corp.* v. *Southern Pac. Co.,* 187 Cal.App.2d 257, 264-265 [9 Cal. Rptr. 714]. While generally favorable to defendant's position, the cited statements in *Transmix* are not persuasive in the determination of the instant case. Defendants also referred the court to *Rhode Island Tool Co.* v. *New York, N. H. & H. R. R. Co.,* 83 R.I. 201 [114 A.2d 404], but the latter case is clearly distinguishable on its facts.

██ Defendant further contends as a matter of law that at the time when the notation, "Damage on this shipment," was made on April 20, 1955, the plaintiff was not evidencing an intention to file a claim for damages, but was only seeking to avoid the waiver of his rights to file a claim for damages at a later date. While the inference for which defendant contends has some support in the record and may be a permissible factual inference to draw from the testimony, the trial court drew the contrary inference that the plaintiff was thereby notifying the defendant carrier in writing of his intention to file a claim for damages. Where opposing factual inferences may reasonably be drawn from the same evidence, the inference drawn by the trial court may not be disturbed by an appellate tribunal. (*Crawford* v. *Southern Pacific Co.,* 3 Cal. 2d 427, 429 [45 P.2d 183] ; *Tidlund* v. *Seven Up Bottling Co.,* 154 Cal.App.2d 663, 665-666 [316 P.2d 656].)

██ Defendant also contends that neither the inspection report nor the notation on the freight bill may be said to comply with the writing requirement of section 2(b) of the bill of lading, because both writings were made by defendant's agent, Hileman, and, defendant further contends, the claim in writing must be made by the claimant. While some of the cases indicate that the claim should emanate from the shipper (see *Delphi Frosted Foods Corp.* v. *Illinois Cent. R. Co., supra,* 188 F.2d 343, 345-346; *Penn State Laundry Co.* v. *Pennsylvania Railroad Co., supra,* 134 F.Supp. 955, 956-957), it is not settled law that the claim must be filed by the shipper personally. (See *Loveless* v. *Universal Carloading & Distributing Co., supra,* 225 F.2d 637, 641.) Nor would it seem to be

necessary that the claim be filed by the shipper, so long as the defendant carrier was given authoritative notice in writing that the shipper intends to claim damages. (See *Insurance Co. of North America* v. *Newtowne Mfg. Co., supra,* 187 F.2d 675, 680-681.)

■ But even assuming that defendant is correct in its contention that the claim must emanate from the shipper, the trial court reached the conclusion that the notation on the freight bill was written by Hileman at plaintiff's insistence. Such a conclusion by the trier of fact finds support in the evidence and therefore may not be disturbed on appeal. (*Crawford* v. *Southern Pacific Co., supra,* 3 Cal.2d 427, 429.) Thus, even though Hileman was employed by the defendant railway, he became plaintiff's agent for the purpose of noting on the freight bill that the plaintiff intended to claim damages because of the condition of his machine. (*T. J. Moss Tie Co.* v. *Stamp* (Mo. App.), 25 S.W.2d 138, 141; Rest., Agency, 2d, § 14 L(1), comment b; see *Hiner* v. *Olson,* 23 Cal.App.2d 227, 230-231 [72 P.2d 890, 73 P.2d 945]; *Pauly* v. *Pauly,* 107 Cal. 8, 25-26 [40 P. 29, 48 Am.St.Rep. 98].) Also, the plaintiff need not have expressly made Hileman his agent for the purpose of noting plaintiff's intention to claim damages. ■■ The existence of an agency is a question of fact (*Brokaw* v. *Black-Foxe Military Institute,* 37 Cal.2d 274, 278 [231 P.2d 816]), which may be implied from the conduct of the parties. (*Smith* v. *Schuttpelz,* 1 Cal.2d 158, 161 [33 P.2d 836].)

The judgment is affirmed.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and Dooling, J., concurred.

Appellant's petition for a rehearing was denied March 29, 1961.